THE HONORABLE JUSTIN L. QUACKENBUSH

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN K. GRANT
PHILLIP G. FREEMON
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

AT SPOKANE

| | |
|---|---|
| PLUMBERS UNION LOCAL NO. 12 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMBASSADORS GROUP INC., et al.,<br><br>Defendants. | No. CV-09-00214-JLQ<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF PLUMBERS UNION LOCAL NO. 12 PENSION FUND'S OPPOSITION TO DEFENDANTS AMBASSADORS GROUP INC., JEFFREY D. THOMAS AND MARGARET M. THOMAS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS<br><br>ORAL ARGUMENT REQUESTED<br><br>DATE:          May 20, 2010<br>TIME:           1:30 p.m.<br>COURTROOM:   The Honorable<br>                      Justin L. Quackenbush |

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12 PENSION FUND'S OPPOSITION TO DFTS AMBASSADORS GROUP INC., J. D. THOMAS AND M. M. THOMAS' MTN TO DISMISS FIRST AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................1

II. SUMMARY OF ALLEGATIONS................................................3

    A. Ambassadors' Business Model ...................................4

    B. Ambassadors' Lost Access to Almost Half Its Customer Base ...........5

    C. Defendants' Misleading Statements ......................................7

III. ARGUMENT ................................................................9

    A. The First Amended Complaint Adequately Alleges that
Defendants Made Misleading Statements...........................10

    B. Plaintiff has Alleged Why Defendants' Statements Were
Misleading with Adequate Particularity..............................14

    C. The First Amended Complaint Alleges a Strong Inference of
Scienter that Is as Compelling as Any Competing Inference
Particularly When the Allegations Are Properly Considered as a
Whole ................................................................18

        1. The Individual Defendants Attended the April 2007
Organizational Meeting and Weekly Executive Meetings
Where the Loss of the Names List Was Necessarily
Discussed ................................................................20

        2. As Senior Executives, Defendants Necessarily Knew
About the Loss of the Middle School Student Names
Given Crucial Importance of Those Names to
Ambassador's Core Operations ....................................21

        3. Defendants' Access to the Student Program Database
Supports Scienter ......................................................23

        4. Defendants' Stock Sales Provide Additional Evidence of
Scienter................................................................24

        5. Plaintiff's Allegations, Considered Collectively, Easily
Support a Strong Inference of Scienter ............................26

    D. The First Amended Complaint Sufficiently Pleads Control
Person Liability ........................................................27

    E. Dismissal with Prejudice Is Not Warranted ........................27

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barrie v. Intervoice-Brite, Inc.*,
    409 F.3d 653 (5th Cir. 2005) ..........................................................................10

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) .................................................................10, 21, 22

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) .................................................................10, 16, 17

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................27

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................11, 13, 14

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) (en banc) ........................................................11

*Howard v. Everex Sys.*,
    228 F.3d 1057 (9th Cir. 2000) ...................................................................19, 27

*In re Convergent Techs. Sec. Litig.*,
    948 F.2d 507 (9th Cir. 1991) ...........................................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .........................................................23

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008), *cert denied*,
    *Gilead Scis., Inc. v. St. Clare*,
    __ U.S. __, 129 S. Ct. 1993 (2009) ...............................................................26

*In re Loudeye Corp. Sec. Litig.*,
    No. C06-1442MJP, 2007 U.S. Dist. LEXIS 60624 (W.D. Wash.
    Aug. 17, 2007) ...............................................................................................17

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS        - iii -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1

2                                                                                    **Page**

3   *In re Metawave Commc'ns Corp. Sec. Litig.*,

4        298 F. Supp. 2d 1056 (W.D. Wash. 2003) ...................................................19

5   *In re Silicon Graphics Sec. Litig.*,

6        183 F.3d 970 (9th Cir. 1999) ...............................................................18, 24

7   *In re SmarTalk Teleservices, Inc. Sec. Litig.*,

         124 F. Supp. 2d 527 (S.D. Ohio 2000).........................................................10
8
    *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
9        No. 2:08-md-1919 MJP, 2009 WL 3517630 (W.D. Wash. Oct. 27,

10       2009) ...........................................................................................23, 24

11  *Institutional Investors Group v. Avaya, Inc.*,

12       564 F.3d 242 (3d Cir. 2009) .......................................................................19

13  *Kaplan v. Rose*,

         49 F.3d 1363 (9th Cir. 1994) ......................................................................11
14
    *McGuire v. Dendreon Corp.*,
15       No. C07-800MJP, 2008 U.S. Dist. LEXIS 65436

16       (W.D. Wash. Apr. 18, 2008).........................................................................17

17  *McGuire v. Dendreon Corp.*,

18       No. C07-800MJP, 2008 U.S. Dist. LEXIS 98773

19       (W.D. Wash. Dec. 6, 2008) ...................................................................10, 17

20  *McMahan & Co. v. Wherehouse Entm't, Inc.*,

         900 F.2d 576 (2d Cir. 1990) ...................................................................10, 11
21
    *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America*
22       *West Holding Corp.*,

23       320 F.3d 920 (9th Cir. 2003) ......................................................19, 20, 21, 22

24  *Osher v. JNI Corp.*,

25       308 F. Supp. 2d 1168 (S.D. Cal. 2004), *aff'd in part and vacated in*

26       *part*, 183 Fed. Appx. 604 (9th Cir. 2006)..............................................16, 17

**Page**

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009) ........................................................................18

*South Ferry LP v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .......................................................19, 21, 22, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................ *passim*

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..........................................................9, 18, 19


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)............................................................................................9, 10

17 C.F.R.
    §240.10b-5(b) ........................................................................................9

Private Securities Litigation Reform Act of 1995  ...................................9, 19

The Securities Exchange Act of 1934
    §20(a) ..................................................................................................27

1  **I.    INTRODUCTION**

2      Ambassadors Group Inc.'s ("Ambassadors" or the "Company") principal

3  business consisted of using direct mail marketing to sell summer travel to middle

4  school and high school students.    ¶¶35-37.[1]    Ambassador Mem. at 4:2-3.[2]

5  Commercial name lists provided 90% of the names the Company relied on for its

6  marketing campaigns.  ¶37.  In 2006, however, Ambassadors suffered a devastating

7  set back.    The Company that provided the commercial name lists advised

8  Ambassadors that it would no longer provide middle school student names.  ¶¶43-45.

9      The loss of the middle school student names severely damaged Ambassadors'

10  ability to deliver its direct mail marketing campaign.  Not only did middle school

11  students (5th, 6th, 7th and 8th grades) represent half of the available student grades,

12  but they had historically enrolled in Ambassadors' programs at a much higher rate

13  than high school students.  ¶37.  Indeed, close to half of Ambassadors' business

14  depended on acquiring middle school student names.  ¶44.

15      The loss of the middle school name lists forced defendants to make critical

16  changes to Ambassadors' direct mail marketing campaign.  First and foremost,

17  Ambassadors was no longer able to solicit almost half of its prior customer base.

18  Hoping to forestall catastrophe, defendants altered the mailing campaign by relying on

19  a replacement list and by delivering solicitations to older students with lower income

20  _____

21  [1]     All paragraph references are to the First Amended Complaint for Violations of

22  Federal Securities Laws ("First Amended Complaint"), filed on January 11, 2010.

23  [2]     "Ambassadors' Mem." refers to Defendants Ambassadors Group Inc., Jeffrey

24  D. Thomas and Margaret M. Thomas' Memorandum in Support of Motion to Dismiss

25  First Amended Complaint for Violation of Federal Securities Laws.  Dkt. No. 51.

26

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS        - 1 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

levels – households that would not have received solicitations in prior years because they were unlikely to be able to afford Ambassadors' programs. ¶¶45, 55. Defendants also hired an additional marketing executive to work on identifying new name sources. ¶47.

These efforts failed, however, to compensate for the lost middle school student names. One of plaintiff's confidential witnesses – CW1 – confirmed that after Ambassadors started using the replacement names list, the poor performance of the replacement list in obtaining student responses was discussed in numerous internal meetings prior to Ambassadors' July 2007 conference call. ¶53.

Despite the devastating loss of the middle school student names, defendants misled investors by assuring them that Ambassadors' marketing program was not materially different from prior years, that increased expenses were due to other causes and that enrollments would continue to grow. Indeed, on July 24, 2007, defendants falsely assured investors that Ambassadors' 2008 marketing campaign was "similar in timing and delivery as previous years" and that they would be focused on "keeping the growth going in 2008." ¶69 at 25:8-9, 28:6-7.

Defendants' assurance that the 2008 marketing campaign was similar to prior years was materially misleading in light of the truth, *i.e.*, that Ambassadors had lost its ability to solicit roughly half of its prior customer base, had lowered the minimum income levels for its solicitations, and was now relying on a replacement list that it had limited experience using.

Ambassadors' efforts to compensate for the lost middle school names also resulted in unanticipated expenses due to hiring a new marketing executive, having to send out a greater number of solicitations and the expense of using the poorly performing replacement names list. When asked about the additional expenses,

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 2 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1   defendants concealed the loss of the middle school student names and attributed the

2   added expenses to other causes.  ¶66.

3       Finally, on October 22, 2007, Ambassadors announced a stunning 30% year-to-

4   year decline in student enrollments for its upcoming program.  ¶¶72-73.  As a result of

5   that shortfall – the direct result of the lost middle school names – Ambassadors

6   suffered an astounding one-day stock price drop of 44% from which it never

7   recovered, causing hundreds of millions of dollars of lost retirement and investment

8   savings:

9



17

18   **II.    SUMMARY OF ALLEGATIONS**

19       This matter is brought as a class action on behalf of investors who acquired

20   Ambassadors' common stock between February 8, 2007 and October 23, 2007.  ¶1.

21   The Court appointed Plumbers Union Local No. 12 Pension Fund to act as the lead

22   plaintiff.  ¶11.  In addition to Ambassadors, the named defendants include Jeffrey D.

23   Thomas ("Jeffrey Thomas"), Ambassadors' President and Chief Executive Officer;

24   Chadwick J. Byrd ("Bryd"), Ambassadors' former Chief Financial Officer; and

25   Margaret M. Thomas ("Margaret Thomas"), Ambassadors' Executive Vice President.

26   ¶13.

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS        - 3 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

### A.    Ambassadors' Business Model

Ambassadors' business principally consists of selling summer abroad trips to middle and high school students. ¶¶35-37; Ambassadors' Mem. at 4. Defendants' own memorandum concedes that Ambassadors' marketing campaign is a two-step process that is wholly dependent on direct mail solicitations:

> Marketing for the Student Ambassador Program essentially consists of a two-step process. **Ambassadors sends [i.e., delivers] direct consumer mailings to invite prospective travelers,** and then local information meetings are held around the country for interested students.

Ambassadors' Mem. at 5:10-13.

Because Ambassadors markets summer travel to middle and high school students, the mailing program occurs on an annual cycle. Ambassadors acquires name lists early in a given calendar year and the executives and marketing personnel then meet in April to analyze the names and organize the mailing effort. ¶¶40, 58. Letters are mailed to students on the name lists in the summer and informational meetings are held in the fall, as the academic year begins, for travel during the following summer. ¶42.

Over the years, Ambassadors has developed a large database with detailed information on the solicitations it has mailed, including demographic and income data based on zip codes, and rates at which students respond to letters, attend meetings and ultimately do or do not purchase one of Ambassadors travel programs. ¶52. Based on years of historical data, Ambassadors knew, for example, that if it sent 10,000 letters to middle school students, it would be able to sign up 80 students on average, while if it mailed 10,000 letters to high school students, roughly 27 students would enroll and travel. ¶44.

Although approximately a quarter of the letters each year went to middle school students, their better response and enrollment rates meant that middle school students

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS          - 4 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1   still represented approximately half of the students who became actual customers. *Id.*

2   Thus, if Ambassadors mailed 40,000 letters, roughly 30,000 of those letters went to

3   high school students.    Those 30,000 letters would result in approximately 81

4   enrollments (*i.e.*, 27 enrollees for each of the 10,000 letters), while the remaining

5   10,000 letters to middle school students would result on average in 80 enrollments,

6   roughly equivalent enrollment for middle and high school students.

**B.**    **Ambassadors' Lost Access to Almost Half Its Customer Base**

In late 2006, Ambassadors suffered a disastrous setback that fundamentally altered how it would deliver its marketing program.  The source of the middle school names, American Student List (identified in the First Amended Complaint as List Company A), advised Ambassadors that it would no longer provide mailing data for middle school students.  ¶¶3, 58.  Although the First Amended Complaint refers to List Company A, lead plaintiff now refers to American Student List by name because further investigation reveals that the senior executive of People to People International has publicly identified American Student List as the source of Ambassadors' outside mailing lists.    An investigative report into whether Ambassadors was mailing misleading solicitation letters to children contains the following information:

Eisenhower [People to People International's president] says the names of potential student ambassadors are generated from three sources:

- **A mailing list compiled by the American Student List company**;

- Nominations from parents and teachers; and

- Nominations from individuals who've traveled with the organization.

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 5 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1  Grant Decl., Exhibit A.[3]

2      Ambassadors' lost access to the middle school names, almost half of its

3  customer base, was a disastrous development and a huge setback for Ambassadors'

4  marketing campaign.  Because Ambassadors relied on the purchased mailing lists for

5  approximately 90% of its business, the loss severely restricted Ambassadors' ability to

6  mail solicitations to its most valuable and most responsive customer segment.

7  Ambassadors had lost its ability to solicit almost half of their expected customers (*i.e.*,

8  half of the 90% of the customers that came from the purchased names list).  ¶¶37, 40.

9      In addition to losing access to almost half of their customer base, the loss of the

10  middle school names also forced Ambassadors to:

11      1.    Lower the minimum average income level of the homes that

12  Ambassadors' sent solicitations to (¶55);

13      2.    Hire additional personnel to look for new name sources (¶57);

14      3.    Send a much greater proportion of the solicitations to older, less

15  responsive students; and

16      4.    Lower the initial registration fee from $400 to $95 (¶60).

17      After Ambassadors learned it would not be able to obtain the middle school

18  names for its mailing program, it held its traditional organizational meetings in April

19  2007 to analyze the names it had obtained – names that no longer included the middle

20   

21  [3]    "Grant Decl." refers to the Declaration of John K. Grant in Support of Lead

22  Plaintiff Plumbers Union Local No. 12 Pension Fund's Opposition to Defendants

23  Ambassadors Group Inc., Jeffrey D. Thomas and Margaret M. Thomas' Motion to

24  Dismiss First Amended Complaint for Violations of Federal Securities Laws,

25  concurrently filed herewith.

26   

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 6 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1  school students provided by American Student List – and organize the marketing

2  program. ¶¶50, 58. The individual defendants attended those meetings and by the end

3  of April 2007, Ambassadors knew how many letters would be sent to the various age

4  groups, their geographic locations and the income levels for those locations. *Id.*

5      **C.**     **Defendants' Misleading Statements**

6          By concealing the devastating loss of the middle school names, defendants

7  assured investors that material difficulties had arisen as compared to prior years. On

8  July 24, 2007, defendants assured investors that the company was "focus[ed]" on the

9  2008 marketing campaign. ¶69 at 25:7-8. Concealing the fundamental changes to

10  Ambassadors' marketing program both as to age groups and income levels, defendants

11  misled investors by assuring them that, **"[t]he [marketing] campaigns are similar in**

12  **timing and delivery as previous years."** *Id.* at 25:8-9. Defendant Jeffrey Thomas

13  also assured investors that **Ambassadors would be "keeping the growth going in**

14  **2008."** *Id.* at 28:6-7. Defendants' statements were misleading because they

15  concealed the fact that Ambassadors had lost the source for almost 50% of its

16  customers.

17          On April 23, 2007, Ambassadors told investors that the "first quarter operating

18  results include increased marketing and development spending as we prepare for and

19  invest in 2008 programs." ¶64. During the following day's conference call, an

20  analyst asked why expenses were $2 million higher than had been expected. ¶66 at

21  22:24-25. Expenses, which had been expected to decrease by $1.5 million, instead

22  increased by $500,000. *Id.* at 22:19-25. Defendant Byrd insisted that "the largest

23  increase that you see there is primarily for the 2007 [marketing] programs." *Id.* At no

24  time, however, did defendants admit or explain that increased expenses were due, in

25  substantial part, to the loss of and need to replace the middle school names.

26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 7 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1   Ambassadors' marketing efforts immediately began to falter, demonstrating the

2   critical importance of the lost names.  According to CW1, a series of meetings were

3   held prior to the July 24, 2007 conference call to discuss the poor performance of the

4   new list from List Company B in obtaining student responses.  ¶53.  In fact, CW3 told

5   plaintiffs that when the informational meetings started in the fall of 2007, younger

6   students were not attending the informational meetings.  ¶57.  He was later told that

7   the reason for the absence was that Ambassadors had been unable to include the

8   younger names in the mail solicitations.  *Id.*  Employees were asked, moreover, not to

9   exercise their stock options.  ¶54.

10   On October 22, 2007, Ambassadors stunned investors by announcing that its

11   2008 marketing campaign was suffering a 30% decline in student enrollment.

12   Ambassadors admitted that "as of October 16, 2007, its net enrolled participants for

13   2008 travel programs were 26,200 compared to 37,300 participants as of the same

14   date last year for its 2007 programs."  ¶72.  On that announcement, Ambassadors'

15   stock price also collapsed, dropping 44% in a single day, losing $17.73 per share and

16   closing at only $21.04.

17   Ambassadors' admissions during its October 23, 2007 and February 7, 2008

18   conference calls strongly corroborate plaintiff's allegations.  During the October 23,

19   2007 conference call, Ambassadors said that it was "researching and analyzing the

20   drivers of [the] decline," but that "part of the decline is driven by an unexpected

21   decline in the performance of one of our named databases or sources of names."  ¶73.

22   In the February 7, 2008 conference call, defendants' admissions were more

23   specific:

24   [W]e had a mailing list issue, which our analysis tells us was a larger
     issue that the economic environment issues we are facing**. . . . [W]e had
25   one key list perform poorly. . . . [O]ur other lists performed basically
     at expectations, . . .** the list that underperformed is one of our most
26   important. . . . [T]his list was the most important factor in negative

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS                                  - 8 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1
2
3

performance this fall. . . . **[T]he issue with the marketing list was much more impactful on our business than the slow-down in the economy. . . .** [W]ithout the mailing list we would be seeing application enrollment rates more on a par with what a person might normally expect in this context.

4
5

¶75.  By defendants' own admission, the bulk of the decline was due to the mailing list problem, with the economy playing a much smaller role, if any.

6

## III.    ARGUMENT

7
8
9
10

U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 makes it unlawful "[t]o make any untrue statement of material fact **or to omit to state a material fact necessary in order to make the statements made . . . not misleading**."  17 C.F.R. §240.10b-5(b).

11
12
13
14

In a private action, a plaintiff must prove five elements: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).[4]

15
16
17
18
19
20
21
22

Defendants only challenge the first and second elements, arguing that plaintiff has failed to allege any false statements and has failed to allege scienter.  On both counts defendants' arguments fail.  Although federal securities claims are subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff's allegations must still be accepted as true on a motion to dismiss.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  The First Amended Complaint alleges with sufficient particularity that defendants made misleading statements and that those statements were made with scienter.

23
24
25
26

---

[4]    All citations and internal quotations and footnotes are omitted and all emphasis is added unless otherwise noted.

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 9 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

The bulk of the misstatements cited in the First Amended Complaint were made in conference calls as part of joint presentations by the three named defendants. Under federal law, **each** corporate officer who participates in a conference call or road show presentation is liable for **all** of the statements made in the presentation, and has a duty to correct any misrepresentations made during the course of that presentation. *Barrie v. Intervoice-Brite, Inc.*, 409 F.3d 653, 656 (5th Cir. 2005) ("Where it is pled that one defendant knowingly uttered a false statement and the other defendant knowingly failed to correct it, . . . the fraud is sufficiently pleaded as to each defendant."); *accord In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 543 (S.D. Ohio 2000); *McGuire v. Dendreon Corp.* ("*McGuire II*"), No. C07-800MJP, 2008 U.S. Dist. LEXIS 98773, at *25-*26 (W.D. Wash. Dec. 6, 2008). Ambassadors itself is liable because the misrepresentations were made by its senior executive officers.

A.     **The First Amended Complaint Adequately Alleges that Defendants Made Misleading Statements**

Under Ninth Circuit law, a statement is misleading if it creates an "impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). SEC Rule 10b-5 prohibits not only statements that are "untrue," but also makes it illegal to omit information necessary to prevent other statements from being misleading.

"[T]he disclosure required by the securities laws is measured not by literal truth, but **by the ability of the material to accurately inform rather than mislead prospective buyers**." *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991) (quoting *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990)). Defendants have a duty to "disclose material facts that are necessary to

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 10 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1  make disclosed statements, whether mandatory or volunteered, not misleading."

2  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992).

3      A company may refrain from speaking, however, when it does speak it must do

4  so truthfully, not in half-truths, *Helwig v. Vencor, Inc.*, 251 F.3d 540, 561 (6th Cir.

5  2001) (en banc) ("[A] company may choose silence or speech . . . but it may not

6  choose half-truths."), and a statement that is literally true may be considered a

7  material misrepresentation if it is misleading in context. *McMahan*, 900 F.2d at 579.

8      Citing *McMahan*, the Ninth Circuit applied precisely the same rule in *Kaplan v.*

9  *Rose*, 49 F.3d 1363 (9th Cir. 1994).  In *Kaplan*, the defendants had represented that

10  their lithotripsy system "ha[d] been used successfully to treat . . . gallstone patients

11  since January 1988." *Id.* at 1372 (*see* "*Statement 2*").  The defendants insisted that the

12  statement was true because it had in fact been used to treat some patients.  *Id.*

13      The Ninth Circuit explained:

14      Nevertheless, while it is literally true that some gallstone patients were
        treated successfully by the Medstone system, a material issue of fact

15      remains whether Medstone misleadingly represented that the system was
        being used successfully on a regular basis, especially given the much

16      higher success rate of the [competing] German machine.

17  *Id.*  Although there may have been some truth to the claim that the system had

18  successfully helped some patients, a jury could find that the statement would mislead

19  investors because defendants failed to disclose the fact that Medstone's 18.5% success

20  rate was much lower than the 80% success rate of the competing product.  *Id.*

21      The misrepresentations alleged in the First Amended Complaint are clearly

22  actionable under the authorities cited above.  After years of significant enrollment

23  growth, Ambassadors' marketing campaign for 2008 had suffered a disastrous

24  setback, including an adverse change in how it could deliver its marketing materials.

25  It was no longer able to buy name lists for the middle school students who constituted

26  half of its customers.  Since the outside lists represented 90% of its sales,

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 11 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1    Ambassadors needed to replace 45% of its customer base (*i.e.*, half of 90%) just to

2    maintain the prior year's enrollment level.

3         It is absurd to suggest that Ambassadors' lost access to the middle school

4    student names list would not have a material adverse impact on Ambassadors'

5    marketing campaign **and how that marketing campaign would be delivered**.  The

6    middle school students on the outside name lists had historically represented

7    approximately 45% of Ambassadors' customers and defendants were no longer going

8    to be able to rely on those enrollments.  These allegations are strongly corroborated by

9    the fact that Ambassadors announced a 30% enrollment shortfall, even after taking

10   steps to compensate for the lost middle school student names.

11        Concealing that setback, and the need to replace the middle school student

12   names, defendants instead assured investors that "[t]he [marketing] campaigns are

13   similar in timing **and delivery** as previous years."  ¶69 at 25:8-9.  That statement was

14   simply untrue.  It was misleading even if it could be considered a "half-truth."

15        It created a false impression because any investor hearing the statement would

16   believe that there was no material difference in how Ambassadors' marketing

17   materials would be delivered.  In fact, there was a material difference that was almost

18   certain to damage Ambassadors' marketing campaign.  Ambassadors was no longer

19   able to deliver marketing solicitations to the vast majority of the middle school

20   students it had relied on in prior years.[5]

21

22

23   _____

     [5]    Although it would be able to mail solicitations based on its internally developed

24   lists, *i.e.*, referrals from teachers and prior customers, the internal lists only

25   represented 10% of Ambassadors' customers.

26

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 12 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1    Defendant Jeffrey Thomas further misled investors by assuring them that

2    Ambassadors would be "focusing more heavily on keeping the growth going in 2008."

3    *Id.* at 28:6-7.  This forward-looking statement that Ambassadors was focusing and

4    would increase its focus on continuing to grow was also misleading.

5    Under Ninth Circuit law, a "projection or statement of belief may be actionable

6    to the extent that one of three implied factual assertions is inaccurate . . . [including]

7    '(3) that the speaker is not aware of any undisclosed facts tending to seriously

8    undermine the accuracy of the statement.'" *Hanon*, 976 F.2d at 501.

9    Defendants' "growth" statement falls under this rule.  The assurance that

10    Ambassadors was focused on growth and would increase that focus assured investors

11    that they could reasonably expect that Ambassadors would continue to grow and that

12    there was no reason to believe otherwise.

13    Because the loss of the middle school student names was an undisclosed fact

14    tending to seriously undermine defendants' assurance that they would "keep[] the

15    growth going," a jury could find that it was misleading and created a false impression.

16    Finally, defendants made affirmative statements concerning Ambassadors'

17    expenses that also concealed the loss of the middle school student names list.  Not

18    surprisingly, Ambassadors incurred substantial expenses in its failed attempt to

19    compensate for the loss of the middle school student names.  Ambassadors hired

20    additional marketing personnel.  Ambassadors also went to a second names list

21    source, List Company B, to buy additional names to replace the lost middle school

22    student names.  The fact that older names were less productive than the younger

23    names meant that Ambassadors would need to buy three additional high school names

24    to replace each lost middle school name.

25    On April 24, 2007, defendants were specifically asked why Ambassadors had

26    incurred $2 million more in expenses than had been expected as responded as follows:

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 13 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

[Analyst]: Good morning. My first question is, it looks like selling and marketing expenses have increased roughly $500,000 sequentially from December to March – whereas, they typically decline sequentially by $1.5 million. I was hoping you could explain the change.

Chadwick Byrd: Yes, this year we've – we're bringing in some selling and marketing programs, not only for 2008, but also for 2007. So the largest increase that you see there is primarily for the 2007 programs.

¶66 at 22:20-25. Defendants also stated that the increased expenses were attributable to "infrastructure to support the growth in delegates traveling with us, completing marketing efforts for [the] 2007 program, and initiating marketing efforts for 2008." *Id.* at 22:4-7.

Defendants concealed the fact, however, that those expenses had increased, in large part, because of the lost middle school student names and the need to replace those names by hiring personnel and by buying additional replacement names.

## B.    Plaintiff has Alleged Why Defendants' Statements Were Misleading with Adequate Particularity

Contrary to defendants' assertions, plaintiff alleges why defendants' statements were misleading with particularity. Much of defendants' argument is premised on a miscomprehension of plaintiff's allegations. Plaintiff is not arguing that defendants misrepresented Ambassadors' actual enrollments or that defendants had a "free-standing obligation" to update investors on the progress of the enrollments.

Plaintiff's allegation is rather that Ambassadors assured investors that nothing significant had changed and concealed the fact that it had suffered a devastating setback to its marketing program that severely impeded its ability to deliver its marketing materials to middle school students. Its marketing campaigns in previous years had relied on American Student List to provide mailing information for middle school students. Because Ambassadors depended on enrollments from that list for approximately 45% of its enrollments, the loss of the list was a severe setback.

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS          - 14 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1    The First Amended Complaint provides adequate detail to corroborate the

2  allegations. Based on the information provided by confidential witnesses, plaintiff has

3  alleged that external list sources had historically provided as much as 90% of

4  Ambassadors' enrollments and has alleged that internal referral lists generated by

5  teachers and prior customers provided 10% of the enrollments. Plaintiff has identified

6  the primary source, American Student List, the company that also provided the middle

7  school names. Plaintiff similarly has alleged that although the middle school names

8  represented 25% of the mailings, because of the better response rate (80 enrollments

9  out of 10,000 mailings to middle school students as opposed to 27 enrollments for

10  10,000 high school student letters), Ambassadors relied on middle school students for

11  approximately 50% of its enrollments. Five confidential witnesses independently

12  confirmed the loss of the middle school names, including a former American Student

13  List executive. ¶¶43, 45, 55, 57, 58.

14    Plaintiff's allegations are corroborated by outside sources. Not only is the

15  identity and importance of American Student List confirmed by People to People

16  International's own executive president, Grant Decl., Ex. A, but defendants' own

17  admissions corroborate plaintiff's allegations of falsity.

18    On October 23, 2007, defendants themselves conceded that Ambassadors was

19  experiencing a 30% shortfall in enrollments. ¶73. Four months later, after analyzing

20  the shortfall, defendant Jeffrey Thomas stated that the shortfall was isolated to a single

21  list that they had only tested in the last two years and that "our other lists performed

22  basically at expectations, no matter the offer, the source or any other demographic

23  factor," excluding the possibility that a weak economy was an important factor in the

24  decline. ¶75. In defendants' own words, "the issue with the marketing list was much

25  more impactful on our business than the slow-down in the economy." *Id.*

26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 15 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1    A critical question, however, is why did Ambassadors need to rely on a
2 replacement list source (the new list had been "tested" in 2005 and 2006) for over
3 30% of its enrollments in the first place?  The only possible explanation is that
4 Ambassadors must have lost an equivalent number of names that it was trying to
5 compensate for.  Ambassadors was trying to compensate for the loss of the middle
6 school student names.

7    The authorities that defendants cite do not require a different result.  In *Brody*
8 and *Osher v. JNI Corp.*, 308 F. Supp. 2d 1168 (S.D. Cal. 2004), *aff'd in part and*
9 *vacated in part*, 183 Fed. Appx. 604 (9th Cir. 2006), the courts held that the alleged
10 omissions were not misleading because the alleged omissions did nothing to render
11 the defendants' affirmative statements misleading.

12    In *Brody*, defendants issued a press release concerning the progress of an
13 ongoing stock repurchase program and a second release announcing the defendants'
14 receipt of "expressions of interest" from parties interested in acquiring the company.
15 *Brody*, 280 F.3d at 999.  Plaintiffs argued that the press releases were misleading
16 because they failed to provide information concerning the acquisition offers.

17    The Ninth Circuit held that neither press release was misleading.  The first press
18 release was not misleading because nothing in that press release "stated **nor implied**
19 anything regarding a merger." *Id.* at 1006.  Discussing one subject does not create an
20 obligation to discuss an unrelated topic.  The second press release, that did address the
21 proposed acquisition, was not misleading either because the press release and the
22 omitted information were consistent and merely differed in the level of detail. *Id.* at
23 1006-07.

24    Similarly in *Osher*, a district court held that a press release concerning a
25 corporation's announcement of a certification agreement with another company was
26 not misleading because it failed to discuss problems the first company was

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS          - 16 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1    experiencing with a product not mentioned in the press release.  *Osher*, 308 F. Supp.

2    2d at 1179-80.  As in *Brody*, there was no relationship between the press release and

3    the omitted information.

4        In sharp contrast to *Brody* and *Osher*, the misrepresentations in this case are

5    directly related to the alleged omissions.  The alleged misstatements addressed the

6    same subjects as the omissions.  Defendants assured investors that the **delivery** of the

7    2008 marketing campaign would be similar to prior years, that nothing important had

8    changed.  The alleged omission – the lost ability to **deliver** solicitations to middle

9    school students – is directly related to and contradicts defendants' assurance that the

10   marketing campaign was similar to prior years.  By defendants' own admission to the

11   Court, the **delivery** of the marketing campaign consisted of mailing solicitations to

12   middle school and high school students followed by informational meetings.

13   Although it may have been similar in some aspects, it was materially and adversely

14   different in very important aspects.  In similar fashion, defendants' representations

15   concerning expenses also directly addressed the same matter that was misleadingly

16   omitted, that the unexpected $2 million increase in expenses was due in large part to

17   the loss of the middle school student names.[6]

18   _____

19   [6]    *In re Loudeye Corp. Sec. Litig.*, No. C06-1442MJP, 2007 U.S. Dist. LEXIS

20   60624 (W.D. Wash. Aug. 17, 2007), and *McGuire v. Dendreon Corp.* ("*McGuire I*"),

21   No. C07-800MJP, 2008 U.S. Dist. LEXIS 65436 (W.D. Wash. Apr. 18, 2008), are

22   similarly distinguishable.  In *McGuire I*, the court held that an announcement that the

23   Food and Drug Administration ("FDA") "action," *i.e.*, a decision, was expected, did

24   not imply that FDA approval was predicted.  In *Loudeye*, the court similarly held that

25   the plaintiffs had failed to identify any statements that were inconsistent with the

26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS          - 17 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

### C. The First Amended Complaint Alleges a Strong Inference of Scienter that Is as Compelling as Any Competing Inference Particularly When the Allegations Are Properly Considered as a Whole

The First Amended Complaint also alleges facts that support a strong inference that each of the defendants acted with actual knowledge and with deliberate recklessness. Discussing scienter in *Tellabs*, the Supreme Court set out four guidelines. First, courts must "accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322. Second, "courts must consider the complaint in its entirety," *i.e.*, "[t]he inquiry . . . is whether all of the facts alleged, **taken collectively**, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23. Third, "the court must take into account plausible opposing inferences." *Id.* at 323. Finally, expressly rejecting the requirement that the inference of scienter requires a "smoking-gun," the Supreme Court held that scienter is adequately alleged if, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

The Ninth Circuit has similarly held that plaintiff's allegations should be analyzed collectively to determine scienter has been adequately alleged (*Zucco*, 552 F.3d at 992; *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180 (9th Cir. 2009)), and has conceded that Ninth Circuit scienter decisions that preceded *Tellabs*, such as *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999), may have applied a scienter standard that was too demanding:

allegedly concealed information. Here in contrast, plaintiff has alleged concealed information that is directly inconsistent with defendants' representations .

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 18 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1
2
3

> [T]he Supreme Court's recent *Tellabs* decision also discusses the level of detail required under the PSLRA, and with its controlling and persuasive weight, it suggests that perhaps *Silicon Graphics, Vantive*, and *Read-Rite* are too demanding and focused too narrowly in dismissing vague, ambiguous, or general allegations outright.

4    *South Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

5    Ninth Circuit law requires a plaintiff to allege that misleading statements of
6    existing fact were made either with actual knowledge with "deliberate recklessness,"
7    while misleading projections must be made with actual knowledge of facts
8    undermining the projection. *No. 84 Employer-Teamster Joint Council Pension Trust*
9    *Fund v. America West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).
10   Recklessness must be shown by highly unreasonable omissions or misrepresentations
11   that involve "not merely simple, or even inexcusable negligence, but an extreme
12   departure from the standards of ordinary care, and which presents a danger of
13   misleading buyers or sellers that is either known to the defendant or is so obvious that
14   the [defendant] must have been aware of it." *Howard v. Everex Sys.*, 228 F.3d 1057,
15   1063 (9th Cir. 2000); *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 267
16   n.42 (3d Cir. 2009).

17   Here, the First Amended Complaint establishes a strong inference of scienter by
18   alleging specific facts from confidential witnesses with knowledge of and exposure to
19   the facts such that their statements may be relied upon – each was a senior marketing
20   employee with management level responsibilities for precisely the issues alleged in
21   the First Amended Complaint.  ¶¶27-34; *Zucco Partners*, 552 F.3d at 990.  The First
22   Amended Complaint describes the confidential witnesses' job titles and
23   responsibilities, and offers "'enough particularized detail to support a reasonable
24   conviction in the [confidential witnesses'] basis of knowledge,'" and the "'coherence
25   and plausibility of the allegations.'" *In re Metawave Commc'ns Corp. Sec. Litig.*, 298
26   F. Supp. 2d 1056, 1068 (W.D. Wash. 2003).

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 19 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1

        **1.    The Individual Defendants Attended the April 2007 Organizational Meeting and Weekly Executive Meetings Where the Loss of the Names List Was Necessarily Discussed**

2

3

      Every April, Ambassadors held meetings to analyze the student names the

4

Company had collected and to organize the mailing program for the upcoming year.

5

¶¶40, 50, 58.  CW5, a senior program director who attended the meetings, confirmed

6

that Jeffrey Thomas and Margaret Thomas also attended the April 2007 meetings.

7

¶58.  In addition to the April meetings, a confidential witness also stated that

8

Ambassadors' executives held weekly meetings to review the past weeks' mailings.

9

¶61.  Because the mailings began in June (¶¶51, 61), Ambassadors' executives would

10

have met four to six times to review Ambassadors' mailings and student responses by

11

the July 24, 2007 conference call.

12

      Given the fact that middle school students represented almost half of

13

Ambassadors' customer base, it is "absurd" to suggest, just as in *America West*, that

14

the loss of the middle school student would not have been discussed in the April 2007

15

meetings to review the names and organize the mailing campaign and/or in the

16

subsequent weekly review meetings.  Ambassadors' senior executives certainly would

17

have been informed of the devastating loss of the middle school student name lists.

18

CW5 also stated that defendant Jeffrey Thomas was familiar with the Company's

19

statistics and knew which names performed better than others, which is consistent

20

with the subject and purpose of the meetings.  *Id.*

21

      Thus, the First Amended Complaint alleges a strong inference that each

22

individual defendant had knowledge at least by April 2007 of the loss of names of

23

middle school students, and would have known the implications of that decision on

24

the marketing program for the Company.

25

26

LD PLTF PLUMBERS UNION LOCAL NO. 12 PENSION FUND'S OPPOSITION TO DFTS AMBASSADORS GROUP INC., J. D. THOMAS AND M. M. THOMAS' MTN TO DISMISS FIRST AMENDED CPLT (CV-09-00214-JLQ)

\- 20 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

**2.    As Senior Executives, Defendants Necessarily Knew About the Loss of the Middle School Student Names Given Crucial Importance of Those Names to Ambassador's Core Operations**

A strong inference of defendants' scienter is also supported by the critical importance of the middle school student names to Ambassadors' core business operations and the individual defendants' roles as senior executives. Courts have repeatedly recognized that some facts or events are so important to a corporation's business that it is extremely unlikely that they would not have come to the attention of the senior executives. *Berson*, 527 F.3d at 987 ("[H]igh-level managers must have known about the orders because of their devastating effect on the corporation's revenue."); *America West*, 320 F.3d at 943 n.21 (issues alleged by plaintiffs were so important to the company that it was "absurd to suggest that the Board of Directors would not discuss" them); *see South Ferry*, 542 F.3d 776.

The First Amended Complaint alleges facts that directly parallel the allegations that the Ninth Circuit found sufficient to establish a strong inference of scienter in *Berson* and *America West*. In *Berson*, stop-orders had been placed on two contracts totaling $18 to $23 million of work. *Berson*, 527 F.3d at 988. The individual defendants were responsible for the corporate defendant's day-to-day operations. *Id.* Although the complaint "allege[d] no particular facts indicating that [the individual defendants] actually knew about the stop-work orders," the Ninth Circuit found that it was "hard to believe that they would not have known about stop-work orders that allegedly halted tens of millions of dollars of the company's work." *Id.* at 987-88.

Similarly in *America West*, the complaint alleged that the Federal Aviation Administration ("FAA") had contacted the defendant concerning maintenance problems and that the corporation had authorized millions of dollars of stock repurchases. *America West*, 320 F.3d at 943. The Ninth Circuit stated that any

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 21 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1   assertion that the individual defendants were aware of these issues was "patently

2   incredible." *Id.* at 943 n.21.  "It is absurd to suggest that the Board of Directors would

3   not discuss" the stock repurchases or FAA investigations.  *Id.*

4         Finally, in *South Ferry*, the Ninth Circuit explained that the "core-operations

5   inference," standing alone, can adequately support a strong inference of scienter

6   "where the nature of the relevant fact is of such prominence that it would be 'absurd'

7   to suggest that management was without knowledge of the matter." *South Ferry*, 542

8   F.3d at 784, 786.

9         The allegations in the First Amended Complaint present precisely such a case.

10   Ambassadors depended on the outside middle school student name lists for roughly

11   45% of its customer base.  This allegation is confirmed by defendants' own October

12   23, 2007 admission that they had experienced a 30% shortfall in enrollments as

13   compared to the prior year (notwithstanding efforts to compensate for the loss).  Just

14   as the Ninth Circuit suggested in *Berson*, *America West* and *South Ferry*, it is absurd

15   to suggest that Ambassadors' senior executives were unaware of a problem of this

16   magnitude.

17         As Ambassadors' senior executives, the individual defendants would

18   necessarily have been aware of and participated in numerous decisions Ambassadors

19   made due to the loss of the middle school student names.  Once Ambassadors learned

20   that it would no longer be able to obtain commercial name lists for the middle school

21   students, Ambassadors and the individual defendants would necessarily have had to:

22         1.     Approve the acquisition of the American Student List name lists without

23   the middle school student names;

24         2.     Identify and approve the alternative replacement name source to

25   compensate for the lost middle school names;

26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 22 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1    3.    Make the decision to lower the minimum household income levels that

2  Ambassadors would send solicitations to;

3    4.    Approve the hiring of a new marketing executive to identify additional

4  name sources;

5    5.    Approve the decision to lower the registration fee from $400 to $95; and

6    6.    Approve the marketing campaign for 2008, without the middle school

7  student names it had previously relied on.

8    Because it is incomprehensible that these issues could have been addressed and

9  resolved in a relatively small corporation without the knowledge of the three senior

10  executives, the First Amended Complaint adequately alleges scienter.

11    **3.    Defendants' Access to the Student Program Database**
     **Supports Scienter**

12

13    Numerous decisions also hold that plaintiffs can establish scienter by alleging

14  that defendants had access to information that contradicted their public statements.  In

15  *South Ferry*, the Ninth Circuit recognized that scienter could be demonstrated by

16  allegations that the "defendants had actual access to the disputed information."  *South*

17  *Ferry*, 542 F.3d at 786.  In *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d

18  1132 (C.D. Cal. 2008), the court similarly held that: "[T]aken together, Sambol's job

19  positions, duties, **and access to corporate reports and information systems** give

20  rise to a strong inference of scienter."  *Id.* at 1194.  More recently, in *In re Washington*

21  *Mut., Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-md-1919 MJP, 2009 WL

22  3517630 (W.D. Wash. Oct. 27, 2009), the plaintiffs raised a strong inference of

23  scienter by alleging, among other things, that the defendant had "access to information

24  contradicting his statements."  *Id.* at *9.

25    Here, the individual defendants similarly had access to information rendering

26  their statements misleading.  In addition to information provided at the April 2007 and

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS                - 23 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

subsequent meetings, the defendants had access to the Student Program database used to analyze Ambassadors' direct mail marketing campaigns. With the Student Program database, the individual defendants were able to generate reports on an ongoing basis, to track and analyze the Company's marketing efforts. ¶52. The Student Program database provided student names, ages, and response or enrollment data. *Id*. Defendants' access to this information further supports scienter.

### 4. Defendants' Stock Sales Provide Additional Evidence of Scienter

The timing of defendants' stock sales provides further support for an inference of scienter. Although allegations of insider trading are not necessary to establish scienter, they may contribute to an evaluation of whether a strong inference of scienter is supported by the entirety of the complaint. *Tellabs*, 551 U.S. at 325. They can provide circumstantial evidence of conscious or deliberately reckless conduct. *Silicon Graphics*, 183 F.3d at 986.[7]

Here, defendants Margaret and Jeffrey Thomas unloaded over $4 million of Ambassadors' common stock in the six months preceding the admission in the

---

[7]     Plaintiff also notes that the SEC also appears to have concluded that transactions in Ambassadors' securities merits investigation. In a recent filing with the SEC, Ambassadors revealed that "On October 27, 2009, the Company was informed by the SEC that it had issued a formal order of investigation with respect to trading in the Company's securities. The Company believes that the investigation is for the period August through December, 2007. In connection with the investigation, the Company, certain of its officers, directors and employees, as well as other persons, have received subpoenas from the SEC requesting information." Grant Decl., Ex. C at 28.

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 24 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1   October 2007 conference call that the names source had underperformed.  Indeed, as

2   defendants point out, over 70% of the Thomas' sales were made no later than June 4,

3   2007.  Ambassadors' Mem. at 32.  The timing is significant.  By April 2007 the

4   individual defendants were well aware of the loss of the names source and could

5   anticipate the consequences on enrollment and the Company's performance.

6       On one day alone, June 4, 2007, Jeffrey Thomas sold 51,000 shares for

7   proceeds of over $1.7 million.  ¶80.  Between June and August, he sold over $3

8   million worth of Ambassadors shares, or approximately $1 million more than he had

9   sold in a comparable period in 2006.  *Id.*; Greene Decl.,[8] Ex. K at 118-119.  Similarly,

10  in a brief two week period in May 2007, defendant Margaret Thomas sold over 34,100

11  shares realizing proceeds of over $1.1 million.  ¶80.  As defendants point out, her May

12  2007 sell-off represented twice the number of shares as her sell-off three years earlier

13  in March 2004, netting her approximately $418,000, and over four times the number

14  of shares she had sold in 2005, which earned her approximately $360,000.

15  Ambassadors' Mem. at 34; Greene Decl., Ex. L at 121-122.  As corroborated by

16  multiple confidential witnesses, moreover, the defendant executives realized these

17  profits at the very same time executives at the Company were instructing the

18  employees not to exercise their own stock options.  ¶¶54, 56.

19      The rational inference from defendants' concealment of the impaired marketing

20  program is that they sought to prop up the value of their stock in order to divest

21

22  [8]    "Greene Decl." refers to the Declaration of Douglas W. Greene in Support of

23  Defendants Ambassadors Group Inc., Jeffrey D. Thomas and Margaret M. Thomas'

24  Motion to Dismiss First Amended Complaint for Violations of Federal Securities

25  Laws.  Dkt. No. 53.

26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)      - 25 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

themselves of as much of their holdings as possible in advance of the bad news that would inevitably arrive.  Plaintiffs are entitled to the benefit of this reasonable inference on a motion to dismiss.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ([T]he court must "'accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs.'"), *cert denied*, *Gilead Scis., Inc. v. St. Clare*, __ U.S. __, 129 S. Ct. 1993 (2009).

### 5.    Plaintiff's Allegations, Considered Collectively, Easily Support a Strong Inference of Scienter

Plaintiff respectfully submits that the inference arising from the allegations of the individual defendants' participation in the April 2007 meetings (to analyze the name lists and organize the mailing campaign) and the inference arising from the overwhelming importance of the middle school student name lists are each adequate to support a strong inference of scienter.  The inference arising from **all of the allegations considered as a whole** overwhelmingly supports a strong inference of scienter.  In fact, plaintiff is only required to allege that a cogent inference of scienter is at least as compelling as the alternative inference.  *Tellabs*, 551 U.S. at 324.

Considered in their entirety as *Tellabs* requires, the allegations of the individual defendants' participation in the April 2007 meetings to organize the 2008 marketing campaign, their attendance in weekly Monday meetings once the mailings began, the importance of the middle school student names to Ambassadors' business, the individual defendants' roles as Ambassadors' senior executives, the necessary participation of the individual defendants in important decisions to adjust for the loss of the middle school student names, and their access to the Student Program database, demonstrate that it would be absurd to suggest that Ambassadors' senior executives were unaware that the Company had lost its access to middle school names which had previously accounted for 45% of its business.

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 26 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1    Here, the inference of scienter not only is cogent, but is far more likely and

2  excludes the possibility that they were unaware of the lost access to the commercial

3  middle school name lists provided by American Student List, a critical set-back to

4  Ambassadors' 2008 marketing campaign.

### D.    The First Amended Complaint Sufficiently Pleads Control Person Liability

5
6    To plead control person liability, plaintiff must show a primary violation of the

7  federal securities laws and that each defendant controlled the violator. *Howard*, 228

8  F.3d at 1065. "[I]t is not necessary to show actual participation or the exercise of

9  actual power" to make out a *prima facie* case. *Id.* Defendants do not dispute

10 Ambassadors' control over the individual defendants as corporate officers, nor that

11 each of the individual defendants, as a senior executive officer of the Company,

12 establishes that they were "control persons" under §20(a) of the Securities Exchange

13 Act of 1934.

### E.    Dismissal with Prejudice Is Not Warranted

14
15   Defendants argue that the First Amended Complaint should be dismissed with

16 prejudice on the grounds that amendment would be futile. *Eminence Capital, L.L.C.*

17 *v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). As set forth above, plaintiff has

18 properly alleged causes of action against the defendants for violation of the antifraud

19 provisions of the federal securities laws. The present motions are defendants' first

20 motions to dismiss this matter and the Court's first consideration of these issues.

21 Plaintiff has and is continuing its investigation into the alleged matters and

22
23
24
25
26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 27 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

1  respectfully requests leave to amend if the Court finds any portion of plaintiff's

2  allegations inadequate.

3  DATED: March 11, 2010    COUGHLIN STOIA GELLER
                               RUDMAN & ROBBINS LLP
4                           JOHN K. GRANT
                            PHILLIP G. FREEMON
5

6

7                               JOHN K. GRANT

8                           100 Pine Street, Suite 2600
                            San Francisco, CA 94111
9                           Telephone: 415/288-4545
                            415/288-4534 (fax)
10                          E-mail: jgrant@csgrr.com
                            E-mail: gfreemon@csgrr.com
11
                            Lead Counsel for Plaintiff
12
                            HAGENS BERMAN SOBOL SHAPIRO LLP
13                          KARL P. BARTH – 22780
                            1918 Eighth Avenue, Suite 3300
14                          Seattle, WA 98101
                            Telephone: 206/623-7292
15                          206/623-0594 (fax)
                            E-mail: karlb@hbsslaw.com
16
                            Liaison Counsel for Plaintiff
17
                            ROBERT M. CHEVERIE
18                            & ASSOCIATES
                            GREGORY CAMPORA
19                          Commerce Center One
                            333 E. River Drive, Suite 101
20                          East Hartford, CT 06108
                            Telephone: 860/290-9610
21
                            Additional Counsel for Plaintiff
22

23

24

25

26

507636_1

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS        - 28 -
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA 94111
Telephone: 415/288-4545 • Fax: 415/288-4534

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mario Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
E-mail: malba@csgrr.com

Karl P. Barth, WSBA No. 22780
Hagens Berman Sobol Shapiro LLP
E-mail: Karlb@hbsslaw.com

John K. Grant
Coughlin Stoia Geller Rudman & Robbins LLP
E-mail: jgrant@csgrr.com

Douglas W. Greene, WSBA No. 22844
Wilson Sonsini Goodrich & Rosati
E-mail: dgreene@wsgr.com

Barry M. Kaplan, WSBA No. 8661
Wilson Sonsini Goodrich & Rosati
E-mail: bkaplan@wsgr.com

Stellman Keehnel, WSBA No. 9309
DLA Piper LLP (US)
E-mail: stellman.keehnel@dlapiper.com

David A. Rosenfeld
Coughlin Stoia Geller Rudman & Robbins LLP
E-mail: drosenfeld@csgrr.com

Samuel H. Rudman
Coughlin Stoia Geller Rudman & Robbins LLP
E-mail: srudman@csgrr.com

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534

1    I certify under penalty of perjury under the laws of the United States of America

2  that the foregoing is true and correct.  Executed on March 11, 2010.

3

4

5  _____

JOHN K. GRANT

6

COUGHLIN STOIA GELLER

7         RUDMAN & ROBBINS LLP

8  100 Pine Street, 26th Floor

San Francisco, CA  94111

9  Telephone:  415/288-4545

415/288-4534 (fax)

10  E-mail:  jgrant@csgrr.com

11  Lead Counsel for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LD PLTF PLUMBERS UNION LOCAL NO. 12
PENSION FUND'S OPPOSITION TO DFTS
AMBASSADORS GROUP INC., J. D. THOMAS
AND M. M. THOMAS' MTN TO DISMISS FIRST
AMENDED CPLT (CV-09-00214-JLQ)

- 30 -

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor, San Francisco, CA  94111
Telephone:  415/288-4545 • Fax:  415/288-4534