# EXHIBIT C

1                                    THE HONORABLE JUSTIN L. QUACKENBUSH

2    HAGENS BERMAN SOBOL SHAPIRO LLP
     STEVE W. BERMAN, WSBA #12536
3    KARL P. BARTH, WSBA #22780
     TYLER S. WEAVER, WSBA #29413
4    1918 Eighth Avenue, Suite 3300
     Seattle, WA  98101
5    Telephone:  206/623-7292
     206/623-0594 (fax)
6
     Liaison Counsel
7
     [Additional counsel appear on signature page.]
8

9                          UNITED STATES DISTRICT COURT

10                        EASTERN DISTRICT OF WASHINGTON

11                                      AT SPOKANE

12    ────────────────────────────────
                                                    )
13    PLUMBERS UNION LOCAL NO. 12           )    No. 2:09-cv-00214-JLQ
      PENSION FUND, Individually and on     )
14    Behalf of All Others Similarly Situated,  )    CLASS ACTION
                                                    )
15                          Plaintiff,            )    SUBMISSION OF ROBBINS
                                                    )    GELLER RUDMAN & DOWD LLP
16          vs.                                  )    IN RESPONSE TO THE COURT'S
                                                    )    FEBRUARY 28, 2012 INTERIM
17    AMBASSADORS GROUP INC., et al.,     )    MEMORANDUM
                                                    )
18                          Defendants.          )
      ────────────────────────────────
19

20

21

22

23

24

25

26

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN                    HAGENS BERMAN SOBOL SHAPIRO LLP
& DOWD LLP IN RESPONSE TO THE COURT'S                  1918 Eighth Avenue, Suite 3300, Seattle, Washington  98101
FEBRUARY 28, 2012 INTERIM MEMORANDUM                   Telephone: 206/623-7292 • Fax: 206/623-0594
(2:09-cv-00214-JLQ)                                    15

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................... 1

II.   RESPONSE....................................................................... 2

    A.    CLAIM FOR ATTORNEY FEES ...................................... 3

        1.    Reported Hours ................................................. 3

        2.    Hourly Rates..................................................... 5

    B.    Claim for Expenses.......................................................... 8

III.  REMEDIAL MEASURES ................................................ 13

IV.   CONCLUSION................................................................ 15

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- i -

16

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

# TABLE OF AUTHORITIES

Page

## CASES

*Blum v. Stenson,*
465 U.S. 886 (1984) .................................................................... 6

*Epstein v. Itron,*
No. CS-97-214-RHW, slip op. (E.D. Wash. Nov. 19, 1999) .............................. 7

*Gates v. Deukmejian,*
987 F.2d 1392 (9th Cir. 1992) ...................................................... 6

*In re AmericanWest Bancorporation,*
No. 10-06097-PCW11, slip op. (Bankr. E.D. Wash. Jun. 2, 2011)..................... 7

*In re Enron Corp. Sec.,*
586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................... 9, 11

*In re Infospace, Inc. Sec. Litig.,*
330 F. Supp. 2d 1203 (W.D. Wash. 2004) ........................................... 5

*In re Initial Pub. Offering Secs. Litig.,*
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................ 9, 12

*In re Qwest Communc'ns Int'l, Inc.,*
625 F. Supp. 2d 1143 (D. Colo. 2009) ............................................. 9

*In re Synthroid Mkg Litig.,*
264 F.3d 712 (7th Cir. 2001) .................................................... 12

*Prison Legal News v. Schwarzenegger,*
608 F.3d 446 (9th Cir 2010) ...................................................... 6

*Riverstone Center West, LLC v. Barnes & Noble Booksellers, Inc.,*
No. CV-08-0395-EFS, slip op. (E.D. Wash. Dec. 15, 2010)............................ 7

*Schulte v. Fifth Third Bank,*
805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................. 4

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM      - ii -
(2:09-cv-00214-JLQ)                          17

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

|  | Page |
|---|---|

*Sutton v. Bernard,*
    504 F.3d 688 (7th Cir. 2007) ........................................................ 6

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ..................................................... 4

*Weatherhead v. United States,*
    112 F. Supp. 2d 1058 (E.D. Wash. 2000) ................................... 6


**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §78u-4 ................................................................. 6, 7, 11, 13

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- iii -

18

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1    Robbins Geller Rudman & Dowd LLP (hereafter "Lead Counsel" or the

2  "Firm"), by and through its partners Darren J. Robbins and Michael J. Dowd, hereby

3  submits this response pursuant to the February 28, 2012 Interim Memorandum by the

4  Court (ECF No. 198) (hereafter "February 28 Order").[1]

5  **I.    INTRODUCTION**

6    On November 30, 2011, this Court directed our partners, Joy Ann Bull and John

7  K. Grant, as follows:

> [Y]ou better report this to Mr. Robbins and the other principals in your
> firm – and it might be worthwhile for you to order out a transcript of this
> hearing – so that other members of your firm in future cases will
> understand my concerns.

Transcript of November 30, 2011 Hearing on Proposed Class Action Settlement

("Nov. 30, 2011 Transcript") at 52.

    In its February 28 Order, the Court further directed the Firm to respond in

writing to the issues regarding Lead Counsel's "Disbursements" and "Expenses" and

attorney fees and, more specifically, to: (1) the "Alleged Investigator Expenses"; (2)

"Other Claimed Expenses," which included a $402 dinner and certain hotel, airfare,

and mediation expenses; (3) the hours expended in connection with the prosecution of

the case; and (4) the hourly rates included in the Firm's fee application.

    These issues raised by the Court have been discussed at the highest levels of the

Firm. The Firm's Executive Committee is acutely aware of this Court's statements at

the November 30, 2011 hearing, this Court's November 10, 2011 Order re: Motion for

Attorney Fees (ECF No. 185), November 23, 2011 Memorandum re: Fairness Hearing

(ECF No. 190), November 28, 2011 Supplemental Memorandum re: Fairness Hearing

---

[1]   *See* Firm biographies of Darren Robbins and Michael Dowd, attached hereto as Exhibit 1.

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 1 -
19

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1  (ECF No. 191), December 7, 2011 Order re: Fairness Hearing (ECF No. 192) and
2  February 28 Order.

3      Mr. Robbins and Mr. Dowd have each reviewed the relevant filings in this case,
4  including every hearing transcript and each of the Court's orders in this case.  We
5  have spoken to Ms. Bull and Mr. Grant at length about this case and the Court's
6  concerns.  Moreover, because we agree there was cause for concern in this case, we
7  convened a meeting with the attorneys in the Firm's Settlement Department, a general
8  meeting of the Firm's partners, and a separate meeting with additional attorneys and
9  staff to discuss the Court's concerns.  Regretfully, mistakes happened in this case, and
10 although they cannot be undone, the Firm has taken action to ensure as this Court
11 noted, "that other members of your firm in future cases will understand [the Court's]
12 concerns."  Nov. 30, 2011 Transcript at 52.

13     We appreciate that the Court has permitted the Firm the opportunity to address
14 these issues in writing, and are available to appear in person at any later date set by the
15 Court for further hearing.

16 **II.    RESPONSE**

17     After a thorough review of the record in this case, we agree there was cause for
18 concern.  We take these concerns seriously.  Maintaining our Firm's hard-earned
19 reputation with the clients we serve, the courts before whom we appear, the respected
20 counsel that associate with our Firm and our opposing counsel is of the utmost
21 importance to our law firm.  At the motion to dismiss hearing, the Court stated:

22     But if you listen to what I have to say, maybe you'll know what's in my
       mind. You know, I spent 20-some years at podiums like that, looking up
23     at those blank faces, thinking: What's on that judge's mind? And so my
       experience in the 30 years now I've been on the federal bench is that it's
24     helpful, whether I'm sitting on the Ninth Circuit or sitting here, to tell
       counsel what's on my mind.
25

26 May 20, 2010 Transcript of: Motions Hearing, ECF No. 81 at 12.

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 2 -
20

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington  98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1    The Court has made its concerns clear.  We believe that we understand what is

2    on the Court's mind and intend to address those concerns.  In particular, the Court has

3    raised concerns over our Firm's lodestar, expenses and the manner in which those

4    items were presented to the Court.  We have reviewed the lodestar, the expenses, the

5    Firm's fee and expense application, and subsequent submissions in preparing this

6    response.  We have spent a significant amount of time reviewing these issues and have

7    implemented corrective actions to address this Court's concerns.  We regret that the

8    Court was required to expend its valuable time and limited resources in connection

9    with its consideration of the Firm's fee and expense application.

10    **A.    CLAIM FOR ATTORNEY FEES**

11    In its February 28 Order, the Court noted that its concerns with the accuracy of

12    the expenses "have also caused the court to view with some skepticism the attorney

13    fee claims."  February 28 Order, ECF No. 198 at 4.  In considering our Firm's lodestar

14    as a cross-check on the Firm's request for attorney fees, the Court raised issues with

15    regard to both the submitted hours and rates requested.

16    **1.    Reported Hours**

17    First, with regard to time spent, we spoke directly with each of the ten attorneys

18    who billed time to this case in preparing this response.  Each of the attorneys, other

19    than Ms. Bull and Mr. Grant, confirmed that the time submitted to the Court on

20    October 27, 2011 accurately reflected the hours they spent prosecuting this case.  Ms.

21    Bull identified one hour that had been incorrectly billed, as set forth in her declaration.

22    Mr. Grant previously identified two mistaken entries and identified one other error in

23    preparing for his discussion with Mr. Robbins and Mr. Dowd, as set forth in his

24    declaration.  We have also spoken to the paralegals and other staff personnel who

25    billed 50 hours or more to this case.  They have affirmed that their time, as submitted,

26

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington  98101
Telephone: 206/623-7292 • Fax: 206/623-0594

- 3 -
21

1 was accurate.  Therefore, based on our review, we believe that the time submitted,

2 other than the four entries described above, is accurate.

3     We understand, however, the Court is concerned not just with the accuracy of

4 the time reported but also with the efficiency, that is, whether the time spent was

5 reasonably necessary to the prosecution of this case.  It is difficult to reconstruct in

6 hindsight the optimal amount of time that should be spent, since each case presents a

7 unique mix of factual and legal circumstances and undoubtedly not all lawyers are

8 equally efficient in our Firm, or any firm.  In fact, for these reasons there has been

9 considerable debate in the legal community about whether hours spent are a fair or an

10 appropriate measure of actual value added.  For example, a *Wall Street Journal* article

11 observed that corporations have attempted to move away from paying defense firms

12 by the billable hour.  *See, e.g.*, Nathan Koppel & Ashby Jones, *'Billable Hour' Under*

13 *Attack*, Wall St. J., Aug. 24, 2009 (attached hereto as Exhibit 2).

14     While we acknowledge that reasonable minds may disagree on the efficiency

15 and necessity of particular tasks, we believe that our attorneys and staff have little

16 incentive to spend more time than necessary on a matter.  We do not bill our clients by

17 the hour.  In the majority of cases where we are successful in a securities case, we

18 seek fees based on the percentage-of-the-fund method.  Some of the jurisdictions in

19 which we practice place little weight on our hours or rates in considering fee

20 applications.  *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 & n.27

21 (N.D. Ill. 2011) (stating "many courts in this circuit have criticized the use of a

22 lodestar cross-check in common fund cases").  Moreover, even in jurisdictions where

23 there is a lodestar cross-check, such as this one, there is no clear correlation between

24 the lodestar and the fee awarded.  For example, courts in this circuit have approved

25 multipliers generally from 1 to 4 times lodestar.  *See Vizcaino v. Microsoft Corp.*, 290

26 F.3d 1043, 1052-54 (9th Cir. 2002) (approving 3.65 multiplier and citing survey of

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 4 -
22

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1   class settlements from 1996 to 2001 showing most multipliers range from 1.0 to 4.0
2   with some much higher).

3       In short, in some jurisdictions additional time is not a factor in the fee awarded
4   and in others it does not necessarily result in higher fees.  The latter is particularly true
5   in the Ninth Circuit.  By contrast, if we are unsuccessful, hours spent in a particular
6   case that were not reasonably necessary represent time that the Firm's lawyers could
7   productively have spent on other cases.

8       Although we expect our attorneys to work efficiently, we also encourage our
9   attorneys to not just work hard on their cases but to out-work opposing counsel.  We
10  hope that our attorneys zealously represent our clients and if that means that they
11  spend long hours on a project or assignment, we do not criticize them for doing so.
12  We believe that our interests are aligned with our clients since we are incentivized to
13  maximize the recovery, not time spent.

14      We understand that a court reviewing a fee application may believe that our
15  attorneys and staff took too much time on a particular task or on the case as a whole,
16  and we certainly understand that courts can, and do, take this into consideration in
17  determining an appropriate fee award.  *See, e.g.*, *In re Infospace, Inc. Sec. Litig.,* 330
18  F. Supp. 2d 1203, 1214 (W.D. Wash. 2004) (Zilly, J.) (reducing lodestar by 5% "to
19  discount for duplication and inefficiency").  Not only do courts adjust the lodestar,
20  but, as noted above, courts vary considerably in the lodestar multiplier they consider
21  reasonable and this may, in part, reflect a rough assessment of the efficiency of the
22  hours expended.  All we can expect is that our attorneys and staff record their time
23  accurately.

24      **2.    Hourly Rates**

25      Second, we understand that the Court also considered our hourly rates for both
26  attorneys and staff to be too high, especially compared to rates in the Eastern District

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 5 -
23

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington  98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1   of Washington.   Because we are a plaintiffs' firm and work on contingent-fee

2   litigations, we believe the relevant market "rates" are the "percentage of fund" we

3   seek, not hourly rates.   In this regard, the Court has already recognized the Ninth

4   Circuit's 25% benchmark in common fund securities fraud class actions, the

5   percentage requested in this case.   In addition, the 25% represents a cap on our fees

6   which reduces the risk of awarding fees for time spent inefficiently.   *See generally*

7   *Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (noting that "[i]n a common fund

8   case, where the defendant's liability is limited to the amount paid into the fund, there

9   is no danger of unduly burdening that party with payment of the plaintiffs' attorneys'

10  fee for time spent on unsuccessful claims").

11         Putting aside the percentage method, we represent clients in districts throughout

12  the United States.   We maintain a uniform national rate and we do not attempt to

13  formulate rates that vary from state to state, or across particular federal districts within

14  a state.   We attempt, however, as best we can, to set our hourly rates at amounts

15  charged by other firms who have a comparable national practice.

16         We are aware that in assessing a fee application in the context of a fee shifting

17  statute, the Supreme Court has directed courts to apply a reasonable hourly rate

18  measured "according to the prevailing market rates in the relevant community." *Blum*

19  *v. Stenson*, 465 U.S. 886, 895 (1984).   And, that "'[g]enerally, when determining a

20  reasonable hourly rate, the relevant community is the forum in which the district court

21  sits.'"   *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir 2010)

22  (citation omitted).   As Judge Van Sickle has noted, however, in *Gates v. Deukmejian*,

23  987 F.2d 1392 (9th Cir. 1992), the Ninth Circuit also recognizes a "limited exception

24  to the general rule that the relevant community is where the district court sits."

25  *Weatherhead v. United States*, 112 F. Supp. 2d 1058, 1076-77 (E.D. Wash. 2000).   In

26  many jurisdictions, class actions under the Private Securities Litigation Reform Act of

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 6 -
24

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1   1995 ("PSLRA") are a classic example of the type of action that falls within the ambit

2   of the limited exception. *See generally Epstein v. Itron*, No. CS-97-214-RHW, slip

3   op. at 4 (E.D. Wash. Nov. 19, 1999) (ECF No. 134) (concluding that "the general rule

4   is, thus, probably not applicable" in a PSLRA case.) (Whaley, J.) (attached hereto as

5   Exhibit 3). The prosecution of a PSLRA securities class action often involves a team

6   of lawyers and other professionals, and requires a significant financial expenditure to

7   prosecute. Although there are many talented lawyers in this district, our research

8   identified no law firm in this district that had been appointed as PSLRA lead counsel

9   in any of the 50 or so PSLRA class actions prosecuted in the district courts in

10  Washington over the last decade or so. And we note that in this case, no other firm,

11  based in Spokane or elsewhere, sought to be appointed lead counsel.

12      We recognize that our rates, like those of comparable national firms, may be

13  higher than those charged by regional firms or other highly regarded lawyers in any

14  particular jurisdiction and that they may be higher than the rates charged by lawyers

15  who perform legal services other than securities litigation. There is also variation

16  among district courts as to what are considered reasonable hourly rates, which may

17  vary based on the type of work performed. *Compare Riverstone Center West, LLC v.*

18  *Barnes & Noble Booksellers, Inc.*, No. CV-08-0395-EFS, slip op. at 4 (E.D. Wash.

19  Dec. 15, 2010) (ECF No. 162) (approving $320 hourly rate for experienced attorney

20  and $90 rate for paralegal in guaranty case), *with In re AmericanWest Bancorporation*,

21  No. 10-06097-PCW11, Order and Application for Compensation (Bankr. E.D. Wash.

22  June 2, 2011 and Apr. 26, 2011) (ECF Nos. 222 and 204) (order granting Application

23  for Compensation providing payment for partners at up to a $945 hourly rate,

24  associates at up to a $610 hourly rate, and paralegals at up to a $270 hourly rate in

25  bankruptcy case) (attached hereto as Exhibits 4 and 5). We also recognize that even

26  on an apples-to-apples basis, our hourly rates may not be the lowest. Thus, we

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM          - 7 -
(2:09-cv-00214-JLQ)                              25

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1 understand that courts in certain jurisdictions, including this Court, may believe that
2 our rates are higher than those charged by equally capable firms offering comparable
3 services in that jurisdiction.

4      Here, we provided the Court with our rates and understand that the Court may
5 opt to reduce those rates or take them into consideration in determining an appropriate
6 lodestar multiplier for purposes of the lodestar cross-check.

7 **B.    Claim for Expenses**

8      We have carefully reviewed our expense application, in particular Ms. Bull's
9 declaration dated October 26, 2011 (ECF No. 181). We agree the Court had reason to
10 be concerned in this case. We understand that there are times when our attorneys,
11 despite diligent effort, make mistakes. Here, mistakes were made that should not have
12 been.

13      "In-house" employees, including the investigator, Steve Peitler, should not have
14 been included under a heading entitled "Disbursements." The declaration should have
15 clearly distinguished between payments made to outside consultants, such as Financial
16 Markets Analysis LLC, and time spent by an in-house investigator, such as Mr.
17 Peitler. Although Ms. Bull's declaration identified Mr. Peitler under a sub-heading
18 entitled "in-house," it should have been made perfectly clear to the Court that the Firm
19 was asking the Court to award expenses at a market rate for in-house personnel, such
20 as investigators, and not at the rate that they are paid internally. Regrettably, it did
21 not.

22      We have spoken to Ms. Bull about this issue. Based on those discussions, we
23 believe that she made a mistake and did not intend to mislead the Court.
24 Nevertheless, her mistake has put the entire Firm's reputation and her career at risk.
25 We have made clear to Ms. Bull the seriousness of this error and the possible shadow
26 it casts on her colleagues and our Firm in doing our best to represent our clients in

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

- 8 -

26

1  various jurisdictions and living up to the very high standards we set for ourselves. We

2  are concerned by the negative impression this has created of our Firm with this Court,

3  which had the confidence to appoint us as lead counsel, the impact on our associated

4  counsel and our clients, and the negative press that our Firm has received as a result.

5        The manner in which these "in-house" categories were presented was

6  unacceptable. Nevertheless, we note that had we made our intentions clear to the

7  Court, the concept of seeking payment for in-house professionals at market rates is not

8  one we believe to be either unfounded or inappropriate. There are divergent views

9  among district courts as to how counsel should be compensated for the use of in-house

10 professionals. Courts have opined that they should be included in lodestar, like

11 partners, associates and other professionals, which could result in a multiplier over

12 their market rate, while other courts have viewed such time as properly included as an

13 expense. *Compare In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 823 (S.D. Tex. 2008)

14 (finding inclusion of in-house investigators as part of lodestar subject to multiplier

15 was appropriate and noting that objectors "contend that Lead Counsel inflates the

16 lodestar by improperly including $6,168,358 which should be categorized as

17 'expenses' generated by [in-house] forensic accountants, economic analysts,

18 investigators, and document clerks"), *and In re Qwest Communc'ns Int'l, Inc.*, 625

19 F. Supp. 2d 1143, 1148-49 (D. Colo. 2009) (approving 3.3 multiplier over lodestar

20 that included hours by in-house accountants at "law firms' current rates"), *with In re*

21 *Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d 467, 507 (S.D.N.Y. 2009) (noting

22 submission listed investigators in both lodestar *and* expenses and stating "I also

23 excluded the lodestar of experts and investigators because their fees were already

24 included [in] the expense request"). Nevertheless, we understand that it is one thing to

25 request that in-house professionals, including investigators, be considered at market

26 rates rather than calculating their implied cost per hour, but it is quite another to not

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

- 9 -

27

1   provide the Court with the tools to enable it to carefully assess the expense application

2   and what its constituent parts mean. The former is a matter left to the discretion of the

3   Court, the latter is unacceptable because it does not allow the Court to make an

4   informed decision about our request.

5       The second expense in Ms. Bull's October 26, 2011 declaration that should

6   have been, at a minimum, reduced was the dinner for four on the night before the

7   mediation. Although both Ms. Bull and Mr. Grant have confirmed that they reviewed

8   meal expenses before submitting them in an effort to identify any item that was not

9   reasonable and necessary, this item was not flagged, reduced or eliminated. It should

10  have been.

11      As to certain other expenses questioned by the Court, including the two airfares

12  and hotel expenses, those represent actual charges by the airline and hotel which were

13  paid by the Firm. We do not mark up those costs. And, although Mr. Grant lodged in

14  Spokane at a rate of $170 per night on another occasion, the Court's concern about

15  Mr. Grant's room charge of $189 per night plus applicable taxes and late checkout fee

16  is well taken. We do not, however, believe the hotel charges incurred in connection

17  with the mediation were excessive. The hotel was selected for its location. The hotel

18  is within a short walking distance of the offices of Irell & Manella, the site of the

19  mediation. We acknowledge that the base rates of $265 and $299 per night (and total

20  charges of $359, $371 and $398, including taxes, meals and/or parking) paid in

21  connection with the mediation were modestly higher than available daily rates (before

22  fees and taxes) of: (i) $200 per night at the Holiday Inn Express Newport Beach; and

23  (ii) $239 per night at the Newport Beach Marriott that we identified in connection

24  with our preparation of this response. We allow our attorneys to stay at hotels that, in

25  our experience, are similar in cost to those that comparable firms use in travel. For

26  example, it is not uncommon for our lawyers to find themselves staying at the same

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)
- 10 -
28

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1  hotels as defense counsel when traveling for depositions or mediation. Certainly, we
2  recognize that the Court may exercise its discretion and reduce the requested
3  reimbursement of expenses for hotel costs incurred in connection with the prosecution
4  of this matter.

5      Third, we reviewed the airfares charged to this case, including the flight taken
6  from New York to Los Angeles on the night before the mediation by Mr. Robbins. As
7  an initial matter, we believe that it was beneficial for Mr. Robbins to attend the
8  mediation as he has substantial experience in favorably resolving PSLRA class
9  actions.  The flights taken in this case ranged in cost from $176 to $2,169.  We
10  understand that the Court has concerns as to whether a flight which cost $1,676 and
11  another which cost $2,169 were reasonable and necessary and whether the class
12  should absorb these costs. We endeavor to incur airfare expenses only as necessary
13  and use a travel service to arrange travel and accommodations. Generally, we book
14  fully refundable fares which are higher priced than nonrefundable fares because in our
15  experience our travel plans often change and rebooking fees can be substantial. Since
16  we are reimbursed for expenses only if we both prevail in the case and a court awards
17  expenses, which can be many years after the case is initiated, we strive to incur only
18  those expenses that are reasonable and necessary.  For example, the $1,676 for the
19  investigator's airfare was incurred prior to the Court's ruling on the motion to dismiss
20  when there was considerable risk it would never be reimbursed.  We incurred it
21  nonetheless because our attorneys believed the trip was necessary for us to win the
22  case. In fact, our willingness and ability to take great risk and expend the resources
23  necessary to pursue litigation whose outcome is uncertain is a factor clients favor in
24  selecting counsel in PSLRA cases. *See, e.g., Enron*, 586 F. Supp. 2d at 827 (noting
25  that one of the factors in appointing lead plaintiff was lead plaintiff's selection of
26  counsel which employed a team of lawyers, investigators, and forensic accountants).

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)
- 11 -
29

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1   The flight that Mr. Robbins purchased to attend the mediation was purchased on short
2   notice and we recognize that less expensive flights were likely available. We
3   acknowledge that even though these amounts were actual out-of-pocket amounts, the
4   Court would be justified in reducing the amounts awarded with respect to these
5   flights.

6       Unlike hourly rates, we have less visibility into the expense reimbursements
7   sought by comparable national firms. *See In re Synthroid Mkg Litig.*, 264 F.3d 712,
8   722 (7th Cir. 2001) (noting expenses should be based on what private market would
9   permit). Thus, we understand that when we incur expenses, there is always a risk that
10  the court may disallow expenses because the court finds them to be excessive. *See,*
11  *e.g.*, *Initial Pub. Offering*, 671 F. Supp. 2d at 505.

12      Finally, the Court noted that "surely the mediator's fee could not have been
13  some $30,000." February 28 Order, ECF No. 198 at 4. While we understand the
14  amount is very significant, it was the actual fee. Although it does little to moderate
15  the magnitude of the fee, the mediator's fee did include preparation time before the
16  mediation and follow-up work thereafter, which work ultimately yielded a favorable
17  outcome for the class. Layn Phillips charged $24,350 for the mediation,
18  approximately one half for preparation time and one half for the day of the mediation.
19  In this case, Mr. Phillips charged an additional $5,700 for post-mediation follow-up
20  efforts. Plaintiff's portion of the aggregate fee was $15,025.

21      While the Court questioned the accuracy of the mediator's fee and not
22  necessarily whether it was reasonable and necessary, this expense was, in our view,
23  reasonable and necessary. First, the vast majority of securities class actions that settle
24  do so with the assistance of a mediator. Although our clients are almost always
25  amenable to settlement discussions without the assistance of a mediator, they rarely
26  result in a settlement. Second, there are very few mediators who specialize in PSLRA

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

- 12 -
30

1   securities class action cases and, in our experience, actually help the parties achieve a

2   resolution.   Layn Phillips is one of those mediators.   As the Court noted at the

3   November 30, 2011 hearing, Layn Phillips was a federal judge for several years and

4   has served successfully as a mediator in many complex securities cases, including

5   PSLRA class actions involving UnitedHealth, Qwest, USWest and Washington

6   Mutual.  Layn Phillips is viewed as completely neutral and as having the ability to

7   grasp and help resolve a complex case without requiring multiple mediation sessions

8   conducted over extended periods of time.  He is frequently proposed as a mediator by

9   defendants, as he was in this case.  Because he is fair, experienced and no-nonsense,

10  we often agree to use his services.  In light of the paucity of mediators familiar with

11  the intricacies of PSLRA class actions, who are viewed as fair and neutral by both

12  plaintiffs and defendants, it is a mediators' market in terms of their cost.   And

13  plaintiffs, like defendants, pay it. While substantial in amount, Layn Philips's fees in

14  this case are comparable to his fees and other mediator fees that have been approved

15  by courts in many other cases. We believed it reasonable to pay more for a mediator

16  who we believed was reasonably likely to get the job done, than pay somewhat less

17  for a mediator who lacks the same proven effectiveness to get the parties to find

18  common ground.

19  **III.   REMEDIAL MEASURES**

20          We take this Court's concerns very seriously and have taken steps in response

21  beyond those set forth above.

22          First and foremost, we circulated this Court's November 10, 2011 and

23  December 7, 2011 orders, and its November 23, 2011, November 28, 2011 and

24  February 28, 2012 memoranda, as well as the transcript of the November 30, 2011

25  hearing, to all of our partners and instructed them to read them.

26

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

- 13 -
31

1    In addition, we held a meeting with the four partners that work in our

2    Settlement Department. We discussed the Court's concerns in this case with them

3    directly and in particular the expense issues raised by the Court. We have instructed

4    our settlement partners that if we seek reimbursement for the time expended by non-

5    lawyer professionals at market rates in an expense application, we make that request

6    perfectly clear and include appropriate details so that each district court can make an

7    informed decision. A federal district judge is entitled to be provided with the

8    appropriate information to make his or her decision. All we can do going forward is

9    ensure that what we incurred, as opposed to what we request, is crystal clear. We

10   shall do so.

11    We have internal guidelines on travel expenses. When our attorneys fail to

12   adhere to those guidelines or when a partner believes that an expense is otherwise

13   excessive, we expect them to reduce it or eliminate it entirely in submitting an

14   expense application to a court. Our team should have done that with the dinner

15   addressed at page 3 of the February 28 Order. We held a partner meeting on March

16   15, 2012 to discuss this Court's concerns and the reasonableness of hotel, meal, and

17   airfare expenses. We reinforced our expectations to ensure that they are met in the

18   future and to remind our attorneys that we are either spending our clients' money or

19   the Firm's money, and either way, it should only be spent as reasonable, appropriate

20   and necessary.

21    As to hours worked, we continue to expect our attorneys and staff to work hard

22   on behalf of our clients. We do not want them to avoid performing necessary tasks

23   because they are concerned that they will be criticized for billing too many hours to a

24   project. We want them to do what it takes to do the job right. However, we have

25   reminded our attorneys about proper documentation of time spent and that as the time

26   spent increases so should the description of services performed to enable a court to

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101
Telephone: 206/623-7292 • Fax: 206/623-0594

- 14 -

1    assess the reasonableness of the time spent in those jurisdictions where a lodestar

2    cross-check is utilized.   On March 16, 2012, we held a mandatory meeting for

3    attorneys, paralegals, and other timekeepers to re-affirm our expectations regarding

4    the level of detail that we believe is necessary to provide a court performing a lodestar

5    cross-check with the information needed to conduct its analysis.

6    **IV.    CONCLUSION**

7    We appreciate the opportunity to respond in writing and in person.  We have

8    taken steps to address the errors and to reduce the possibility that they recur.

9    We apologize that unintentional yet serious errors resulted in the Court

10   spending an undue amount of time considering our fee and expense request and

11   understand that those errors justifiably caused the Court to question additional items.

12   We have spent considerable time reviewing these matters in the hope that our

13   response and remedial efforts demonstrate to the Court the seriousness with which we

14   take this matter and our desire to address the Court's concerns.  Despite these errors,

15   we do believe that we achieved a good result for the class and that our work provided

16   value to the class.

17

18

19

20

21

22

23

24

25

26

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 15 -
33

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington  98101
Telephone: 206/623-7292 • Fax: 206/623-0594

1    We hope that we have addressed this Court's concerns.  We are ready to appear

2  in person to answer any questions the Court wishes to be answered.

3  DATED:  March 19, 2012            Respectfully submitted,

4                                   ROBBINS GELLER RUDMAN
                                       & DOWD LLP
5                                   DARREN J. ROBBINS
                                    MICHAEL J. DOWD
6

7

8                                   _____
                                         DARREN J. ROBBINS
9

10                                  _____
                                         MICHAEL J. DOWD
11

12

13                                  655 W. Broadway, Suite 1900
                                    San Diego, CA  92101
14                                  Telephone:  619/231-1058
                                    619/231-7423 (fax)
15                                  e-mail: darrenr@rgrdlaw.com
                                    e-mail: miked@rgrdlaw.com
16
                                    ROBBINS GELLER RUDMAN
17                                     & DOWD LLP
                                    JOHN K. GRANT
18                                  MATTHEW S. MELAMED
                                    Post Montgomery Center
19                                  One Montgomery Street, Suite 1800
                                    San Francisco, CA  94104
20                                  Telephone:  415/288-4545
                                    415/288-4534 (fax)
21                                  E-mail: jgrant@rgrdlaw.com
                                    E-mail: mmelamed@rgrdlaw.com
22
                                    Lead Counsel for Plaintiff
23

24

25

26

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM        - 16 -
(2:09-cv-00214-JLQ)                           34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN, WSBA #12536
KARL P. BARTH, WSBA #22780
TYLER S. WEAVER, WSBA #29413
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
E-mail: steve@hbsslaw.com
E-mail: karlb@hbsslaw.com
E-mail: tyler@hbsslaw.com

Liaison Counsel for Plaintiff

ROBERT M. CHEVERIE
 & ASSOCIATES
GREGORY CAMPORA
Commerce Center One
333 E. River Drive, Suite 101
East Hartford, CT  06108
Telephone:  860/290-9610

Additional Counsel for Plaintiff

694797_1

SUBMISSION OF ROBBINS GELLER RUDMAN
& DOWD LLP IN RESPONSE TO THE COURT'S
FEBRUARY 28, 2012 INTERIM MEMORANDUM
(2:09-cv-00214-JLQ)

- 17 -
35

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300, Seattle, Washington  98101
Telephone: 206/623-7292 • Fax: 206/623-0594

# EXHIBIT 1

### DARREN J. ROBBINS

Darren J. Robbins is a founding partner of Robbins Geller and a member of its Executive and Management Committees. Mr. Robbins oversees various aspects of the Firm's practice, including the Firm's Institutional Outreach Department and its Mergers and Acquisitions practice. Mr. Robbins has served as lead counsel in more than one hundred securities-related actions, which have yielded recoveries of over $2 billion for injured shareholders.

One of the hallmarks of Mr. Robbins' practice has been his focus on corporate governance reform. For example, in *UnitedHealth*, a securities fraud class action arising out of an options backdating scandal, Mr. Robbins represented lead plaintiff the California Public Employees' Retirement System and was able to obtain the cancellation of more than 3.6 million stock options held by the company's former CEO and a record $925 million cash recovery for shareholders.

**Education:** B.S., University of Southern California, 1990; M.A., University of Southern California, 1990; J.D., Vanderbilt Law School, 1993

**Honors/Awards:** One of the Top 100 Lawyers Shaping the Future, *Daily Journal*; One of the "Young Litigators 45 and Under," *The American Lawyer*; Attorney of the Year, *California Lawyer*; Managing Editor, *Vanderbilt Journal of Transnational Law*, Vanderbilt Law School

### MICHAEL J. DOWD

Michael J. Dowd is a founding partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. Mr. Dowd is responsible for prosecuting complex securities cases and has obtained significant recoveries for investors in cases such as *AOL Time Warner*, *UnitedHealth*, *WorldCom*, *Qwest*, *Vesta*, *U.S. West* and *Safeskin*. In 2009, Mr. Dowd served as lead trial counsel in *Jaffe v. Household Int'l Inc.* in the Northern District of Illinois, which resulted in a jury liability verdict for plaintiffs expected to yield in excess of $1 billion for the injured class. Mr. Dowd also served as the lead trial lawyer in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after only two weeks of trial for $100 million. Mr. Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991, and again from 1994-1998.

**Education:** B.A., Fordham University, 1981; J.D., University of Michigan School of Law, 1984

**Honors/Awards:** Attorney of the Year, *California Lawyer*; Director's Award for Superior Performance, United States Attorney's Office; Top 100 Lawyers, *Daily Journal*, 2009; B.A., *Magna Cum Laude*, Fordham University, 1981

# EXHIBIT 2



**GLOBAL COMPLIANCE SYMPOSIUM**

**FEATURED SPEAKERS**
Marschall I. Smith
SVP Legal Affairs & General Counsel
3M

**LEARN MORE AND REGISTER**

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format.    Order a reprint of this article now

# THE WALL STREET JOURNAL.
WSJ.com

LAW    |    August 24, 2009

# 'Billable Hour' Under Attack

*In Recession, Companies Push Law Firms for Flat-Fee Contracts*

By NATHAN KOPPEL and ASHBY JONES

With the recession crimping legal budgets, some big companies are fighting back against law firms' longstanding practice of billing them by the hour.

The companies are ditching the hourly structure -- which critics complain offers law firms an incentive to rack up bigger bills -- in favor of flat-fee contracts. One survey found an increase of more than 50% this year in corporate spending on alternatives to the traditional hourly-fee model.



Pfizer earlier this year reached a deal with law firms, doing away with billable hours and switching to a flat fee. The pharmaceutical company's general counsel, Amy Schulman, talks about what was behind the arrangement.

The shift could further squeeze earnings at top law firms. The past 18 months have been brutal for some big law firms as work that hinges on vibrant credit markets, such as deal making, has flat-lined.

Pfizer Inc., which spends more than $500 million a year on legal matters, says it expects to reduce its domestic law-firm spending by 15% to 20%, largely through flat-fee arrangements. It will pay 16 law firms lump sums to handle various portfolios of work, such as litigation and tax matters. "I have told firms you cannot make your historical profit margins" on Pfizer work, said the pharmaceutical giant's general counsel, Amy Schulman.

Cisco Systems Inc. has notified its stable of outside law firms that it is vital for the company to move away from the hourly billing structure. Cisco now uses fixed fees or other alternatives to the billable hour for about 80% of its legal work, said its general counsel, Mark Chandler.

American Express Co. also has stepped up its use of alternative billing arrangements, and "I haven't had one firm in 2009 tell us, no, that they flatly wouldn't entertain something that moves away from the traditional straight hourly model," said the company's chief litigation counsel, Stuart Alderoty. "The paradigm has changed."

Money spent on alternative billing arrangements has totaled $13.1 billion this year, versus $8.6 billion in the like period of 2008, according to BTI Consulting Group Inc., which surveyed 370 lawyers who work at Fortune 1000 companies. The Wellesley, Mass., firm said that the lawyers reported average

'Billable Hour' Under Attack - WSJ.com



Pascal Perich for The Wall Street Journal
Amy Schulman, general counsel of Pfizer Inc.

cost savings of 15% from using alternative arrangements. It said 63% of the surveyed lawyers planned to increase their use of alternative billing arrangements.

Companies have long complained that legal fees are inflated by a business model in which law firms have high-priced junior lawyers who must be kept busy billing for work that could be handled more efficiently. With the recession, companies have the leverage to force changes, say some lawyers at both client companies and law firms. "Law firms are more receptive to change because they are in the business of needing legal work," said Daniel Fitz, chairman of the Association of Corporate Counsel.

Partner profits were down an average of 4% last year at the highest-grossing firms, according to American Lawyer magazine. Their hourly rates have risen to a range of $300 to $1,000. But with the slump, firms have had to dismiss associates, reduce salaries and cut back on hiring of new graduates. "Just like the tech and housing bubbles, there was a legal-profession bubble, and now we are experiencing a correction," says David Antzis, managing partner of Philadelphia-based Saul Ewing LLP, which is doing more fixed-fee work.



Associated Press
Pfizer is pushing for fixed-fee arrangements with law firms.

Pfizer could have demanded a discount from firms' hourly rates, Ms. Schulman said, but she hopes for a shift to a system that encourages firms to work more collaboratively with Pfizer and with other law firms that service Pfizer. The flat-fee program "should be something fundamentally different that will last beyond whatever people think they have to tolerate because of the economy," she said.

Some legal departments have for years experimented with flat fees for certain types of repetitive, predictable work like patent applications. Attorneys say it is doubtful flat fees could ever supplant hourly billing for the most complicated and high-stakes matters, such as an antitrust fight with the government or a particularly tricky corporate merger, where it's too hard to

estimate how much effort it will consume.



Associated Press
American Express also has stepped up its use of alternative billing arrangements.

In addition, "a client can't expect to have the absolute best team of [trial] lawyers from a firm, and have the lawyers give up all the other work they could be doing on a regular-fee basis, to work 18 hours a day for months of time on a flat-fee engagement," said Barry Ostrager, a Simpson Thacher & Bartlett LLP partner who handles civil trials.

Orrick, Herrington & Sutcliffe LLP, a San Francisco-based firm, has tripled the revenue it generates from alternative billing arrangements in the past year, but maintained profitability through efficiencies, said David Fries, chief client-service officer. Software sends an email to lawyers when they hit certain levels of a fixed-fee budget, as a reminder to work efficiently. Financial analysts file biweekly reports analyzing how lawyers'

time is being spent. "You find that someone may have spent 200 hours on something" that isn't crucial, Mr. Fries said.

Orrick has also altered the mix of lawyers it employs, focusing less exclusively on hiring graduates from elite law schools, who can command starting pay of $160,000. It is employing some college graduates who can perform routine tasks at a lower cost.

Saul Ewing in Philadelphia recently investigated a client's potential corporate acquisition under a six-week flat-fee engagement. The matter was handled about 10% more cheaply for the client than it would have been under a billable-hour deal, said Mr. Antzis, the managing partner. He said "it was still fair to the firm" because "we were incentivized to get done in 10 hours what another lawyer at another firm may have spent 12 hours doing."

At Sidley Austin LLP, Sara Gourley, a partner, said changes made by Pfizer have given her more freedom to put the best mix of lawyers on a legal matter. Pfizer used to have a rule that no lawyer with an hourly rate higher than a second-year attorney's could bill the drug company for legal research. Now that costs are fixed, Ms. Gourley says, she has been able to assign a senior associate to perform Pfizer legal research who could get the answers much more quickly than a junior lawyer might.

**Write to** Nathan Koppel at nathan.koppel@wsj.com and Ashby Jones at ashby.jones@wsj.com

Copyright 2012 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by
copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit
www.djreprints.com

# EXHIBIT 3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 19 1999

JAMES R. LARSEN, CLERK
DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK EPSTEIN et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ITRON et al.,<br><br>Defendants. | NO. CS-97-214-RHW<br><br>**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND AWARDING ATTORNEY FEES, *INTER ALIA*** |

Before the Court are Plaintiffs' Motion for Approval of Settlement and Plan of Allocation, and Motion for Attorney Fees. These matters were argued on September 16, 1999. John R. Layman, Steven J. Toll, and Joseph J. Tabacco argued for Plaintiffs; Barry M. Kaplan for Defendants. The motions were taken under advisement pending the submission of supplemental materials regarding expenses. This will memorialize the Court's rulings.

**A. Approval of settlement**

The file reflects five opt-outs, several of whom offer their opinions about securities litigation in general and this case in particular, but does not disclose any formal objection, and the comment/opt-out period is now closed.

Itron had $20 million in insurance coverage, and somewhat less than $3 million in liquid assets. **Ct. Rec. 113, page 18.** If the defense spent dollar-for-dollar what Plaintiffs did, the coverage would have been depleted by slightly over $3 million at the time of the settlement, leaving somewhat less than $17 million available. At the hearing, defense counsel confirmed that this figure is approximately accurate. Given the costs

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND AWARDING ATTORNEY FEES, *INTER ALIA* ~ 1**

1  associated with completing the 20 depositions contemplated, engaging in serious motion

2  practice, and ultimately trial, accepting $12 million early on is eminently reasonable.

3      Had the case gone forward, the harder Plaintiffs made Defendants work, the less

4  recovery they would have received.  The class would have been doubled up on expenses,

5  paying not only class counsels' expenses (assuming success), but effectively "paying"

6  Defendants' expenses as well because insurance coverage was a wasting asset.  Add to

7  that the risk of losing, at trial or on appeal, the years of delay inherent in the system, and

8  the possibility that the carriers might disclaim coverage at the conclusion of trial, it is

9  clearly in the best interests of the class to take a sure 12¢ on the dollar now.

10      **B.  Plan of allocation**

11      Plaintiff's expert John Torkelsen hypothethizes that the price moves following the

12  disclosures made on September 11, 1996 and October 22, 1996 each reflect a decrease

13  in inflation and nothing more.  **Ct. Rec. 115, ¶¶ 13-15.**  That is the way it is usually

14  done.  But for reasons he does not fully explain, he takes the price move following the

15  May 30, 1996 disclosure and slices it in half.  *Id.*, **¶ 12.**  One-half he considers a

16  decrease in inflation (Defendants' technology didn't work), and the other half, he

17  attributes to potential buyers withholding orders for reasons unrelated to technology.  *Id.*

18  Torkelsen did this "to be fair and equitable."  *Id.*

19      If one stopped with his declaration, it would appear that there ought to be more in

20  the record than a market analyst's ruminations about what's fair and equitable to support

21  this approach.  It favors those who purchased after May 30, 1996 at the expense of those

22  who purchased earlier.  In their memo, however, Plaintiffs explain that this allocation

23  was done because some claimants "have a relatively stronger claim for greater damages

24  that could have been recovered at trial."  **Ct. Rec. 114, page 16.**  The concept is

25  expanded upon in counsels' joint declaration by noting that there were comparatively few

26  actionable misrepresentations made during the first nine months of the class period.  **Ct.**

27  **Rec. 113, ¶ 54.**  Giving credit to those who are in the best position to know the relative

28

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND
AWARDING ATTORNEY FEES, *INTER ALIA* ~ 2**

1  strengths and weaknesses of Plaintiffs' case, this is enough to warrant endorsing the plan.

2  **C. Attorney fees**

3      Legal work in the case was characterized at every turn as thoroughly professional

4  and technically accomplished.  Counsel contend that 30% would be a fair return for their

5  effort and risk.  While the work performed is faultless, enhanced fees are not warranted

6  for several reasons.  A plethora of trial court decisions to the contrary, it is now firmly

7  settled at the circuit level that the benchmark in common fund cases is 25%.  *Paul,*

8  *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *accord, Hanlon*

9  *v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re Washington Public Power*

10  *Supply Sys. Litig.*, 19 F.3d 1291, 1297 (9th Cir. 1994); *Torrisi v. Tucson Elec. Power*

11  *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  Courts have discretion to depart up or down

12  depending on the facts of a given case, but a deviation must be supported by articulable

13  justifying reasons.  The Court can say with certainty that the work performed was of a

14  quality that would be expected from firms of this stature, but sees nothing so out of the

15  ordinary as to warrant diminishing class recovery beyond the norm.  We cannot lose

16  sight of the fact that the "court, class counsel, and class representatives all have [a]

17  continuing duty to protect absent class members."  *Jerry Enterprises, Inc. v. Allied*

18  *Beverage Group*, 178 F.R.D. 437, 443 (D. N.J. 1998).

19  **1. Methodology**

20      The emerging majority rule is that considerations of fairness, self-policing of fees,

21  and judicial economy render the percentage method by far the more attractive in common

22  fund cases, as opposed to traditional lodestar methodology.  *See State of Florida v.*

23  *Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (historical overview).  However, trial courts

24  retain discretion to employ either the percentage or the lodestar method when

25  circumstances favor one over the other.  *Washington Public Power, supra*, 19 F.3d at

26  1295-96.

27      In the aggregate, counsel spent 11,000 hours of attorney time and, at ordinary

28  

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND AWARDING ATTORNEY FEES,** *INTER ALIA* ~ 3

1  billing rates, this totals $2,362,000. **Ct. Rec. 117, Exhibit A, ¶ 7.** That means the

2  average hourly rate for everyone, from full partner to junior associate, is $215.

3  Ordinarily, this would run afoul of the rule that the presumptive lodestar rate is the rate

4  prevailing in the relevant community, which in this case is Spokane, because that is

5  where the case would have been tried. *Davis v. Mason County*, 927 F.2d 1473, 1488

6  (9th Cir. 1991); *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir.

7  1990). Only when unusual circumstances warrant the importation of high-priced counsel

8  will non-local rates be applied. *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-

9  41 (8th Cir. 1982).

10    From a technical standpoint, there was nothing unusual about the case other than

11  the threshold issue of whether the Complaint met newly-enacted pleading requirements.

12  *See Epstein v. Itron, Inc.*, 993 F. Supp. 1314 (E.D. Wash. 1998), *disavowed*, *In re*

13  *Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 974-75 (9th Cir. 1999). There was

14  nothing about the case so arcane, esoteric, or specialized that a Spokane attorney could

15  not have handled it. From a practical standpoint, however, it is questionable how many

16  local firms would have been willing to front expenses of this magnitude, plus support

17  11,000 hours of billable time, plus commit to take the matter through trial. In this high

18  stakes arena, perhaps it is inherent in the system that only a handful of superstar firms

19  will dominate the field. While the general rule is, thus, probably not applicable, one

20  cannot lose sight of the fact that the class is paying west coast prices for eastern

21  Washington work.

22    **2. Percentage**

23    As indicated, the Ninth Circuit has adopted a benchmark of 25%, with upward or

24  downward adjustments for unusual features that take a case out of the norm. *Paul,*

25  *Johnson*, 886 F.2d at 272. There has been a movement afoot by some trial courts to

26  raise the benchmark to 30%. *In re Activision Securities Litig.*, 723 F. Supp. 1373, 1377

27  (N.D. Cal. 1989). Counsel cite 198 cases that have awarded 30% or more. **Ct. Rec.**

28

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND
AWARDING ATTORNEY FEES, *INTER ALIA* ~ 4**

1  **116, Attachment.** The Court has not read them all by any means, but enough to know

2  that one of the factors relied upon in exceeding the 25% benchmark is the level of work

3  required. The court in *Activision* analyzes 14 decisions awarding (or approaching) 30%,

4  and finds a common thread. "Most of these cases achieve this result after lengthy motion

5  practice, volumes of discovery, and hence, the accumulation of extensive attorney time

6  on behalf of all parties." 723 F. Supp. at 1377. Moreover, counsel misread *Activision*.

7  The author of the opinion, after stating repeatedly that 30% is the benchmark, awarded

8  only 22% in attorney fees. *Id.* at 1379. The balance of the 32.8% award was for

9  expenses. *Id.*

10      It might be argued that the efficiency with which the case was resolved should

11  count for something. Document discovery and prefiling inquiry were heavy, but beyond

12  that, there was a motion to appoint lead plaintiffs, a motion to dismiss, a motion for class

13  certification, and a handful of depositions. That was it. Efficiency should count for

14  something, but it should not count for being paid more because less work was required.

15      Counsel characterize the recovery as "exceptional," "superior," "excellent," and

16  "outstanding." **Ct. Recs. 116, page 1; 114, pages 1, 16; 113, pages 3, 22.** Torkelsen

17  believes total recovery at trial could have been $66.74 million. **Ct. Rec. 115, ¶ 3.** Gross

18  recovery was $12.075 million, and approximate net (assuming counsel receive what they

19  ask for in fees and costs) will be about $7.9 million. Less than 12¢ net on the dollar does

20  not sound all that exceptional. For reasons stated in the section addressing approval of

21  the settlement, it was the best that could be expected. Defendants could not place on the

22  table what they did not have, and it is improbable that a $66.74 million judgment would

23  have been collectible. But getting the best that can be expected under the circumstances

24  is not the same as saying it was an extraordinary recovery warranting extraordinary fees.

25  **D. Expenses**

26      When an officer of the Court represents he incurred expenses, and could document

27  them with business records, that should settle the matter. However, there was nothing in

28

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND
AWARDING ATTORNEY FEES,** *INTER ALIA* ~ 5

1  the record from which the reasonableness of the expenses could be ascertained. It would
2  be fair to start with the premise that counsel would not have spent money unnecessarily.
3  They were not working on a cost-plus basis, but on a contingency, with no guarantee of
4  recovery. The managing partners of the seven firms involved would have had something
5  to say about lavish spending. It is also notable that expenses total only 4% of gross
6  recovery although, unlike attorney fees, expenses expressed as a percentage of recovery
7  have no real meaning because each case runs up its own sort of costs. While the total
8  costs appeared reasonable, the bare summaries raised question marks with respect to
9  certain line items. Travel expenses for one firm in the amount of $123,830.58 represents
10 a lot of travel. **Ct. Rec. 117, Exhibit A, ¶¶ 5 & 8.** In order to discharge its obligation
11 to the absent class members, the Court requested supplementation of the record beyond
12 the bare summaries.

13      The record has now been supplemented, and the expenses request reduced to
14 $470,386.32. The questions raised have been answered. The Court is satisfied that the
15 expenses claimed were reasonable and necessary to the effective prosecution of the
16 case.[1]

17      **E.  Compensation to lead Plaintiffs**

18      Class counsel recommends the payment of $3,500 to each of the lead Plaintiffs.
19 Their level of participation could be better documented, but for a 2-year-old case, the
20 sum requested appears reasonable. It is not unusual to reward lead plaintiffs with
21 "incentive" or "recognition" payments when their efforts benefit the class as a whole. *In*

22 _____

23      [1]In the initial submissions, the Court discovered several computational errors, but
24 counsel have caught these in their supplemental materials, except for one. The Milberg
25 Weiss summary is totaled wrong and overstates the line items by $646.35. However,
26 attached to the declaration is a 13 page computerized report. The Court will accept the
27 report over the summary and simply assume that several items did not find their way into
28 the summary.

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND
AWARDING ATTORNEY FEES, *INTER ALIA* ~ 6**

1  | *re Telectronics Pacing Sys.*, 186 F.R.D. 459, 482 (S.D. Ohio 1999).

2  | **F. Opt-outs**

3  | Five opt-outs have been received; three of which are timely: Janell Bloodworth

4  | Itee, Lloyd D. Ashford, and Rosemary Redd. Two additional untimely submissions were

5  | received: Children's Health Care Wilke, and Mellon Trust. Class counsel recommends

6  | honoring all five. The Court will do so. The above-identified individuals shall be

7  | excluded from the class, and shall neither participate in the settlement proceeds, nor be

8  | bound by the judgment herein.

9  | **G. Sealing**

10 | The settlement placed on the record before Magistrate Judge Suko was ordered

11 | sealed, as was the parties' Supplemental Agreement Regarding Requests for Exclusion.

12 | The only purpose was to avoid public knowledge of the parties' agreement that

13 | Defendants could withdraw from the settlement if a certain percentage of the class chose

14 | to opt out. Now that the opt-out period has closed, there is no longer any need to

15 | maintain these materials under seal. Absent objection made within 10 days, they will be

16 | unsealed.

17 | **H. Relief from LR 7.1(g)**

18 | The local rule prohibits citation to unpublished opinions. When an unpublished

19 | opinion has something to say that is not otherwise available, the local rule may be

20 | waived, as it has been before in this case. But here, *Paul, Johnson* is controlling. A

21 | stack of unpublished trial court opinions a mile high can't change *Paul, Johnson*.

22 | Accordingly, **IT IS HEREBY ORDERED:**

23 | 1. Plaintiffs' Motion for Approval of Settlement and Plan of Allocation (**Ct. Rec.**

24 | **___**) is **GRANTED**. The parties' Proposed Final Judgment and Order of Dismissal is

25 | being entered concurrently herewith.

26 | 2. Plaintiffs' Motion for Attorney Fees and Expenses (**Ct. Rec. ___**) is

27 | **GRANTED**. Fees in the amount of $3,000,000 are approved, as are expenses in the

28 |

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND
AWARDING ATTORNEY FEES,** *INTER ALIA* ~ 7

1    amount of $470,386.32.

2        3.  Plaintiffs' Motion for Relief from Local Rule 7.1(g) **(Ct. Rec. 119)** is

3    **DENIED**.

4        **IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter

5    this order and to furnish copies to counsel.

6        **DATED** this ___ day of November 1999.

7

8

9                          ROBERT H. WHALEY
                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    Q:\Civil\1997\epstein.atty.fees.wpd

27

28

**ORDER APPROVING SETTLEMENT AND PLAN OF ALLOCATION AND
AWARDING ATTORNEY FEES,** *INTER ALIA* ~ 8

# EXHIBIT 4

1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF WASHINGTON

7    RIVERSTONE CENTER WEST, LLC, a
8    Washington company, RIVERSTONE          NO. CV-08-0395-EFS
     CENTER EAST, LLC, a Washington
9    Company, and RIVERSTONE CENTER,
     LLC, a Washington company,
10                                           **ORDER GRANTING AND DENYING
                  Plaintiffs,                IN PART DEFENDANTS' MOTION
11                                           FOR ASSESSMENT OF THE
                  v.                         REQUESTED ATTORNEYS' FEES
12                                           AND COSTS PURSUANT TO IDAHO
     BARNES & NOBLE BOOKSELLERS,             LAW**
13   INC., a Delaware corporation,
     and BARNES & NOBLE, INC., a
14   Delaware corporation,

15                Defendants.

16        Before the Court, without oral argument, is Defendants Barnes &

17   Noble Booksellers, Inc. ("Booksellers") and Barnes & Noble, Inc.'s

18   (Barnes & Noble) (collectively, "Barnes & Noble Defendants") Motion for

19   Assessment of the Requested Attorneys' Fees and Costs Pursuant to Idaho

20   Law (ECF No. 142), which requests $642,927.34 in attorneys' fees and

21   $613,845.24 in costs.  Plaintiffs Riverstone Center West, Riverstone

22   Center East, and Riverstone Center (collectively, "Riverstone Companies")

23   agree that Barnes & Noble Defendants, as the substantially prevailing

24   party, are entitled to an award of reasonable attorneys' fees and taxable

25   court costs, but contend that 1) the requested hourly rates for counsel

26   are unreasonable and that many of the requested paralegal hours are for

     unrecoverable clerical and training tasks, and 2) the requested costs

ORDER * 1
                                    53

1   include nontaxable costs.  After reviewing the submitted material and
2   relevant authority, the Court is fully informed.  For the reasons given
3   below, the Court grants ($624,499.50 in attorneys' fees) and denies
4   (portion of the requested attorneys' fees; bill of costs to be refiled)
5   in part the motion.

6   **A.    Authority and Analysis**

7        The determination of attorneys' fees is a matter of substantive law;
8   therefore, a federal court sitting in diversity applies the forum state's
9   law when assessing attorneys' fees.  *Winterrowd v. Am. Gen. Annuity Ins.*
10  *Co.*, 556 F.3d 815, 827 (9th Cir. 2009); *Kona Enters, Inc. v. Estate of*
11  *Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).  However, when determining
12  taxable costs in a diversity action, a federal court generally applies
13  federal law because reimbursement of costs is an issue of trial
14  procedure.[1]  *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167-68 (9th Cir.
15  1995).  With Idaho law as its guide in relation to the attorneys' fees
16  request and federal law as its guide in relation to the cost request, the
17  Court turns to each request.

18       1.    Attorneys' Fees

19       Idaho Code 12-120(3) states:

20  _____

21       [1]  State law applies to procedural matters only if 1) "the pedigree
22  of the federal rule could not be traced back to a federal statute or a
23  Federal Rule of Civil Procedure" or 2) "the federal rule created an
24  incentive to shop for the federal forum."  *Id.* at 1167-68.  For the
25  reasons set forth in *Aceves*, federal law, and in particular Local Rule
26  54.1, will control the reimbursement of taxable cost, including expert

witnesses, in this diversity action.  *Id.* at 1168.

ORDER * 2

54

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, *guaranty*, or *contract* relating to the purchase or sale of goods, wares, merchandise, or services and *in any commercial transaction* unless otherwise provided by law, *the prevailing party shall be allowed a reasonable attorney's fees to be set by the court, to be taxed and collected as costs.*
>
> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. . . .

(Emphasis added.)  Section 12-120(3) not only applies to a prevailing plaintiff, but also to a defendant who successfully defends a claim embraced by this statute.  *Pinnacle Performance, Inc. v. Hessing*, 135 Idaho 364, 370 (Ct. App. 2001); *Freiberger v. Am. Triticale, Inc.*, 120 Idaho 239, 243 (1991).

Although Barnes & Noble was the only signatory to the Lease,[2] the Court finds both Defendants may recover attorneys fees under Idaho Code 12-120(3) because the gravamen of this action, including the guaranty,

---

[2]    Booksellers, as a signatory to the Lease, is entitled to an award of reasonable attorneys' fees not only pursuant to Idaho Code 12-120(3) but also under Lease paragraph 37.9, which states:

> In the event either party hereto initiates litigation or hires legal counsel to enforce or protect its rights under this Lease, the substantially prevailing party shall be entitled to recover from the unsuccessful party, in addition to other damages or relief awarded or obtained, all court costs and reasonable attorneys' fees incurred in connection with such litigation or action by legal counsel, as determined and awarded by such judicial authority.

Barnes & Noble was the guarantor and its guaranty is unilateral so there is contractual provision allowing it to recover attorneys' fees against the Riverstone Companies.

ORDER * 3

55

1    was a commercial transaction.    *See Gunter v. Murphy's Lounge*, 141 Idaho
2    16, 32 (2005).    Further, the Court finds that all of the Riverstone
3    Companies' claims, including the tortious interference claim, arose from
4    the commercial transaction.    Finding that Barnes & Noble Defendants are
5    entitled to reasonable attorneys' fees, the Court turns to assess the
6    reasonableness of the requested fees.

7        The Riverstone Companies oppose the reasonableness of the hourly
8    rates charged by defense counsel.    The Court finds the hourly rates
9    charged by Elizabeth Tellessen, Christopher Crago, and Collette Leland,
10    as well as the $80.00 law clerk hourly rate and the paralegal hourly
11    rates, reasonable.    The Court, however, reduces the claimed hourly rates
12    for Matthew Anderson, Beverly Anderson, and Lynden Rasmussen.    The Court
13    finds $320.00 is a reasonable hourly rate for Mr. Anderson given that he
14    is a member of the American College of Trial Lawyers, he has been a
15    federal civil litigator for a number of years, and this matter involved
16    complex contract issues.    The Court finds $300.00 to be a reasonable
17    hourly rate for Ms. Anderson and Mr. Rasmussen.

18        The Riverstone Companies do not object to the requested legal hours,
19    and the Court finds the requested legal hours reasonable. Idaho R. Civ.
20    P. 54(e)(3).    Accordingly, the Court awards the following fees for
21    counsel's work:

| Counsel | Hourly Rate | Total Hours | Award |
|---|---|---|---|
| C. Matthew Anderson | $320.00 | 997 | $319,040.00 |
| Beverly Anderson | $300.00 | 105.6 | $31,680.00 |
| Lynden O. Rasmussen | $300.00 | 1.7 | $510.00 |
| Ryan D. Yahne | $250.00 | 217.90 | $54,475.00 |

ORDER * 4

| Elizabeth Tellessen | $200.00 | 420.0 | $84,000.00 |
| Christopher Crago | $175.00 | 9.0 | $1,575.00 |
| Collette Leland | $170.00 | 499.9 | $84,983.00 |
| | | | **$576,263.00** |

Further, the Court reduces Defendants' requested paralegal costs because a number of the tasks were clerical or training. *See P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 239 (2007). The following requests are denied:

| Date | Initials | Hours | Unawarded Amounts |
|------|----------|-------|-------------------|
| 1/26/09 | CLK | 1.0 | $90.00 |
| 11/6/09 | CLK | 0.8 | $72.00 |
| 11/12/09 | CLK | 0.5 | $45.00 |
| 11/30/09 | RJH | 0.7 | $52.50 |
| 12/2/09 | RJH | 0.5 | $37.50 |
| 12/2/09 | RJH | 0.7 | $52.50 |
| 12/9/09 | RJH | 0.5 | $37.50 |
| 12/9/09 | CLK | 2.1 | $189.00 |
| 12/10/09 | RJH | 1.0 | $75.00 |
| 12/10/09 | CLK | 0.8 | $72.00 |
| 12/11/09 | CLK | 1.1 | $99.00 |
| 1/5/10 | RJH | 1.9 | $142.50 |
| 1/5/10 | RJH | 4.0 | $300.00 |
| 1/11/10 | CLK | 1.5 | $135.00 |
| 1/12/10 | RJH | 4.0 | $300.00 |
| 1/13/10 | RJH | 6.0 | $450.00 |
| 1/15/10 | RJH | 5.8 | $435.00 |
| 1/19/10 | RJH | 0.8 | $60.00 |
| 1/20/10 | RJH | 0.7 | $52.50 |

ORDER * 5

| | | | |
|---|---|---|---|
| 1/20/10 | JK | 0.5 | $45.00 |
| 1/21/10 | RJH | 0.4 | $30.00 |
| 2/2/10 | RJH | 5.5 | $412.50 |
| 2/5/10 | RJH | 3.8 | $285.00 |
| 2/8/10 | RJH | 5.0 | $375.00 |
| 2/9/10 | RJH | 3.0 | $225.00 |
| 2/10/10 | RJH | 1.0 | $75.00 |
| 2/12/10 | RJH | 0.7 | $52.50 |
| 2/17/10 | RJH | 1.0 | $75.00 |
| 2/19/10 | RJH | 1.9 | $142.50 |
| 2/19/10 | RJH | 3.0 | $225.00 |
| 2/19/10 | RJH | 1.0 | $75.00 |
| 2/19/10 | RJH | 1.0 | $75.00 |
| 2/25/10 | RJH | 4.0 | $300.00 |
| 3/1/10 | RJH | 2.0 | $150.00 |
| 3/2/10 | RJH | 0.1 | $7.50 |
| 3/3/10 | RJH | 0.1 | $7.50 |
| 3/3/10 | RJH | 0.3 | $22.50 |
| 3/3/10 | RJH | 0.2 | $15.00 |
| 3/15/10 | RJH | 0.1 | $7.50 |
| 3/16/10 | RJH | 0.1 | $7.50 |
| 3/16/10 | RJH | 0.1 | $7.50 |
| 3/18/10 | RJH | 0.2 | $15.00 |
| 3/18/10 | RJH | 0.2 | $15.00 |
| 3/18/10 | RJH | 0.1 | $7.50 |
| 3/19/10 | RJH | 0.1 | $7.50 |
| 3/23/10 | RJH | 0.2 | $15.00 |
| 3/30/10 | RJH | 1.3 | $97.50 |
| 3/30/10 | RJH | 1.5 | $112.50 |
| 3/30/10 | RJH | 1.5 | $112.50 |

ORDER * 6

| | | | |
|---|---|---|---|
| 3/30/10 | CLK | 1.1 | $99.00 |
| 3/31/10 | RJH | 1.0 | $75.00 |
| 3/31/10 | RJH | 0.4 | $30.00 |
| 3/31/10 | RJH | 0.3 | $22.50 |
| 3/31/10 | RJH | 1.0 | $75.00 |
| 4/8/10 | RJH | 0.4 | $30.00 |
| 4/8/10 | CLK | 1.0 | $90.00 |
| 4/9/10 | RJH | 1.2 | $90.00 |
| 4/14/10 | RJH | 1.2 | $150.00 |
| 4/15/10 | RJH | 0.8 | $60.00 |
| 4/15/10 | RJH | 0.8 | $60.00 |
| 4/28/10 | JK | 0.2 | $18.00 |
| 5/3/10 | RJH | 0.5 | $37.50 |
| 5/6/10 | RJH | 1.0 | $75.00 |
| 5/24/10 | RJH | 0.5 | $37.50 |
| 5/26/10 | RJH | 1.0 | $75.00 |
| 6/2/10 | RJH | 0.8 | $60.00 |
| 6/2/10 | RJH | 0.5 | $37.50 |
| 6/3/10 | RJH | 1.3 | $97.50 |
| 6/3/10 | RJH | 3.5 | $262.50 |
| 6/4/10 | RJH | 9.0 | $675.00 |
| 6/8/10 | RJH | 3.5 | $262.50 |
| 6/9/10 | RJH | 6.5 | $487.50 |
| 6/24/10 | RJH | 1.0 | $75.00 |
| 6/25/10 | RJH | 4.0 | $300.00 |
| 6/29/10 | RJH | 3.0 | $225.00 |
| 6/30/10 | RJH | 3.5 | $262.50 |
| 7/12/10 | CLK | 0.5 | $45.00 |
| | | **TOTAL:** | **$9,511.50** |

ORDER * 7

After reducing these clerical hours from the requested paralegal hours (ECF No. 147, p. 30), the following paralegal award is made:

| Paralegal | Hourly Rate | Awarded Hours | Award |
|-----------|-------------|---------------|-------|
| CLK | $90.00 | 359.6 | $32,364.00 |
| EC | $90.00 | .50 | $45.00 |
| RJH | $75.00 | 196.1 | $14,707.50 |
| | | TOTAL: | $47,116.50 |

In summary, the Court awards $624,499.50 in attorneys' fees: $576,263.00 for counsel; $47,116.50 for paralegals; and $1,120.00 for law clerks (fourteen hours at $80.00 per hour).

2.    Costs

As mentioned above, Local Rule 54.1 governs the recovery of costs. Therefore, within fourteen days after the Order's entry, the Barnes & Noble Defendants shall file a modified cost request consistent with Local Rule 54.1. *See* http://www.waed.uscourts.gov/publications/ao133.pdf. The Clerk of Court will then review the bill of costs.

Given Riverstone Defendants' reliance on *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, the Court takes this opportunity to comment upon it. 482 U.S. 437 (1987). In *Crawford Fitting Co.*, the Supreme Court ruled that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Id.* at 445. Here, there is no explicit statutory or contractual authorization for taxable costs exceeding §§ 1821 and 1920s limitations. Congress has not lifted §§ 1821 or 1920's limitations. And although Lease paragraph 37.9 allows the prevailing party to recover "all court costs," this language only explicitly allows for the recovery of "*court*

ORDER * 8

1  costs." By modifying "cost" with "court," the parties did not agree that

2  the prevailing party would recover expert witness fees in excess of the

3  standard witness fees.   28 U.S.C. § 1920(3) (citing to 28 U.S.C. §

4  1821(b), (d)(1), (c)(4)).

5  **B.    Conclusion**

6      For the above-given reasons, **IT IS HEREBY ORDERED:**

7      1.   Barnes & Noble Defendants' Motion for Assessment of the

8  Requested Attorneys' Fees and Costs Pursuant to Idaho Law **(ECF No. 142)**

9  is **GRANTED and DENIED IN PART.**

10     2.   Judgment is to be entered in Barnes & Noble Defendants' favor

11  against the Riverstone Companies jointly and severally in the amount of

12  $624,499.50 for attorneys' fees.

13     3.   Within fourteen days of this Order's entry, Barnes & Noble

14  Defendants shall refile its bill of cost as directed above.

15     **IT IS SO ORDERED.**  The District Court Executive is directed to enter

16  this Order and provide a copy to counsel and Lee Ann Mauk.

17     **DATED** this_15th_ day of December 2010.

18

19                    s/Edward F. Shea

20                 EDWARD F. SHEA
             United States District Judge

21

Q:\Civil\2008\0395.attyfees.wpd

22

23

24

25

26

**EXHIBIT 5**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

LF 2016D (5/05)

Case Name: AmericanWest Bancorporation _____    Case Number: 10-06097-PCW-11 _____

### ORDER AWARDING COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §330 or §331

THIS MATTER HAVING come before the Court on the #__1st____ (☑ interim ☐ final) application of _G. Larry Engel and Morrison & Foerster LLP_ dated __4/26/11___ docket # __204___ for an order allowing compensation for services rendered and reimbursement of expenses in the above entitled case; and the court being fully advised in the premises:

NOW THEREFORE the below listed amounts are hereby allowed and awarded as compensation and reimbursement pursuant to 11 USC §330 or §331 to the above-named applicant and are authorized to be disbursed or transferred from funds of the above entitled estate, subject to the availability of funds and the provision of any confirmed plan. *

| | | |
|---|---|---|
| Compensation in the amount | $ | 523,777.25 |
| Reimbursement in the amount of | $ | 12,948.99 |
| **TOTAL** | $ | 536,726.24 |

\* If for first application, includes compensation earned pre-petition and filing fees and other costs incurred pre-petition.

Summary of all prior award on previous applications:

| | | |
|---|---|---|
| Compensation | $ | _____ |
| Reimbursement | $ | _____ |
| Total | $ | 0.00 |

Disbursement information for this award:

| | | |
|---|---|---|
| Received directly from debtor by appl | $ | 430,939.99 |
| To be paid by transfer from attorney trust account: | $ | _____ |
| To be paid by | $ | 105,786.25 |
| Total | $ | 536,726.24 |

*Presented by:*  G. Larry Engel _____
      Name
      Address:  425 Market Street
               San Francisco, CA 94105-2482
      Telephone:  (415) 268-7000

*Patricia C Williams*
Patricia C. Williams
**Bankruptcy Judge**

ORDER ALLOWING
COMPENSATION AND
REIMBURSEMENT OF
EXPENSES

06/02/2011 11:10:22

Local Form 2016 (2/06)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

Case Name: <u>AMERICANWEST BANCORPORATION</u>    Case Number: <u>10-06097-PCW-11</u>

## APPLICATION FOR AWARD OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 USC 330

Name of Applicant:        <u>G. Larry Engel and MORRISON & FOERSTER LLP</u>
Position of Applicant:    <u>(i) special counsel for AmericanWest Bancorporation ("AWBC") and</u>
                          <u>(ii) special counsel for the directors and officers of AWBC</u>

Application Number:        <u>1</u>        ☒ Interim        ☐ Final

The undersigned applicant applies to the court for an award or allowance of compensation for services rendered and for reimbursement of expenses incurred in the above entitled case pursuant to 11 USC 330 (*or USC 331 if an interim application*). This application is supported by the following information and attached documents.

I.    (*If applicant is employee of trustee, debtor in possession or creditors committee*) Date of Entry of Order Approving Employment: <u>Employment approved *nunc pro tunc* as of the Petition Date of October 28, 2010.</u>

II.    Dates Covered by this Application: October 28, 2010 to March 31, 2011.

III.    The name, position, hourly rate, total time spent and amount requested for all compensation for services rendered by each person covered by this application, in connection with this case, is as follows (*If this is the FIRST Application, include **ALL** time and amounts, both pre- and post -petition in this Application*):

| Name | Position | Hourly Rate | Total Time | Amount Requested |
|------|----------|-------------|------------|------------------|
| Engel, G. Larry | Partner | $795.00 | 95.00 | $75,525.00 |
| Feldman, Stephen | Partner | $945.00 | 0.50 | $472.50 |
| Fields, Henry | Partner | $815.00 | 45.30 | $36,919.50 |
| Fields, Henry | Partner | $865.00 | 1.05 | $908.25 |
| Kohler, Kenneth | Partner | $705.00 | 104.00 | $73,320.00 |
| Kohler, Kenneth | Partner | $725.00 | 21.10 | $15,297.50 |
| Maeder, Gary | Partner | $740.00 | 1.00 | $740.00 |
| Gillett, Mark | Partner | $705.00 | 0.80 | $564.00 |
| Thorpe, Andy | Partner | $595.00 | 0.80 | $476.00 |
| Barrage, Alexandra | Of Counsel | $635.00 | 165.10 | $104,838.50 |
| Barrage, Alexandra | Of Counsel | $670.00 | 0.50 | $335.00 |
| Novak, Vincent | Associate | $535.00 | 133.70 | $71,529.50 |
| Novak, Vincent | Associate | $610.00 | 3.30 | $2,013.00 |
| Hiensch, Kristin | Associate | $525.00 | 50.00 | $26,250.00 |
| Keen, Jonathan | Associate | $380.00 | 155.80 | $59,204.00 |
| Keen, Jonathan | Associate | $450.00 | 29.50 | $13,275.00 |
| Kushner, Dina | Associate | $325.00 | 94.70 | $30,777.50 |
| Kline, John | Paralegal | $250.00 | 43.20 | $10,800.00 |
| Kline, John | Paralegal | $270.00 | 1.60 | $432.00 |
| Susoyev, Steve | Paralegal | $200.00 | 0.50 | $100.00 |
| **Totals:** | | | 947.45 | $523,777.25 |

APPLICATION FOR COMPENSATION AND REIMBURSEMENT - 1
sf-2983686

IV.  Total amount of REIMBURSEMENT of expenses requested by this application in connection with this case (*If this is the **FIRST** Application, include **ALL** costs (including filing fees), both pre- and post -petition):  $12,948.99

V.  Total of Compensation and Reimbursement requested:  $536,726.24

VI.  (If applicant is a trustee) The maximum amount of compensation allowable under 11 USC 326(a) is: $ N/A .

VII.  (*If applicant is an employee of trustee, debtor in possession or creditors committee*). All Compensation for services rendered and reimbursement of expenses incurred for which award is sought were necessary to the administration of the case; beneficial to the estate, and does not include any unnecessary duplication of services.
☐Yes ☐No ☒N/A  (If answer is NO attach an explanation.)

VIII.  (*If applicant is the attorney for the debtor*) All compensation for services rendered and reimbursement for expenses incurred for which award is sought for representing the interests of the debtor(s) were necessary and beneficial to the debtor(s) in connection with the case.
☒Yes ☐No ☐N/A  (If answer is NO attach an explanation).

IX.  Compensation or reimbursement previously received has been shared with another entity, or an agreement or understanding exists between the applicant and any other entity for sharing of compensation received or to be received for services rendered in or in connection with this case, except as a member or regular associate of a firm of lawyers. ☐Yes ☒No (If answer is YES attach an explanation).

X.  Attached to this application, and made part of this application are the following supporting documents:

a.  ☒  Statement of Money or Property Received or Promised Other than by Applicant (*required in all cases, LF 2016A*);

b.  ☒  Summary Supporting Application for Compensation for Services or Reimbursement of Expenses (*required in all cases, LF 2016B*);

c.  ☒  Itemization of Services Rendered (*required; itemization must be by project category if cumulative compensation exceeds $10,000*);

d.  ☒  Itemization of Expenses (*required*); and

e.  ☒  Narrative Summary (*required if cumulative compensation exceeds $10,000, LF 2016C*).

The undersigned Applicant states under penalty of perjury that the representations contained in this application and attachments are true and correct to the best of applicant's knowledge and belief.

DATED: 4/26/11

_____
(*Signature of Applicant*)

Name:  G. Larry Engel and MORRISON & FOERSTER LLP
Position:  (i) special counsel for American West Bancorporation ("AWBC") and (ii) special counsel for the directors and officers of AWBC
Address:  Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105-2482
Phone:  (415) 268.7000; Fax:  (415) 268.7522

APPLICATION FOR COMPENSATION AND REIMBURSEMENT - 2
sf-2983686

Local Form 2016A (9/99)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

Case Name: _____    Case Number: _____

**STATEMENT OF MONEY OR PROPERTY RECEIVED OR PROMISED
IN CONNECTION WITH THIS CASE OTHER THAN BY APPLICATION OR A PLAN**

Name of Applicant: _____
Position of Applicant: _____
Application Number: _____

☑ No Money or property was received or promised other than by application as a part of a Chapter 13 Plan.

(a)    Money or things of value received other than by application or as part of a Chapter 13 Plan:

    (1)    Amount received by attorney or firm for filing fee    $ 0.00

    (2)    Amount received before the order for relief by attorney or firm for services and costs    $ 1,010,000.00

    (3)    Amount received after the order for relief by attorney or firm for services and costs    $ 430,939.99

    (4)    Value of any property or service given to attorney or firm as payment of fees and costs    $ 0.00
        Description:

    (5)    Total of entries 1, 2, 3 and 4    $ 1,440,939.99

    (6)    Amount remaining in client trust account    $ 0.00

(b)    Amount applied to filing fee and services    $ (1,440,939.99)
    *(Subtract entry (a)(6) from entry (a)(5))*

(c)    Money promised:    $ 0.00
    Nature of arrangement for promise of payment: _____

(d)    Total amount and value of all money or property received or promised other than by Application or a Chapter 13 Plan *(items (a)(5) and (c))*    $ 1,440,939.99

(e)    Other Items *(Value and description of any liens, guarantees, security interests or promissory notes):*
    N/A

(f)    Source of Payment of Promise *(If other than the debtor, identify entity and relationship to the debtor):*
    N/A

STATEMENT OF MONEY OR PROPERTY RECEIVED

Local Form 2016B  (3/02)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

Case Name: _____    Case Number: _____

## SUMMARY SUPPORTING APPLICATION FOR COMPENSATION FOR SERVICES OR REIMBURSEMENT OF EXPENSES

Name of Applicant:        _____
Position of Applicant:    _____
Application Number:       _____

| Sequential # | | Applied for | Awarded | Received |
|---|---|---|---|---|
| A<br>Receipts other than by Application<br>*(Transfer from (b) of Application LF 2016A)* | **Date**<br>**Compensation**<br>**Expenses** | | | 4/25/11<br>$ 417,991.00<br>$ 12,948.99 |
| Prior Application<br>#  N/A | **Date**<br>**Compensation**<br>**Expenses** | $_____<br>$_____ | $_____<br>$_____ | $_____<br>$_____ |
| Prior Application<br># N/A | **Date**<br>**Compensation**<br>**Expenses** | $_____<br>$_____ | $_____<br>$_____ | $_____<br>$_____ |
| Prior Application<br># N/A | **Date**<br>**Compensation**<br>**Expenses** | $_____<br>$_____ | $_____<br>$_____ | $_____<br>$_____ |
| Present Application<br>*(Transfer totals from III & IV of Application)*<br>#_____ | **Date**<br>**Compensation**<br>**Expenses** | $ 523,777.25<br>$ 12,948.99 | | |
| **Totals**<br><br>B | **Compensation**<br>**Expenses**<br><br>**Total Comp. + Exp.** | $ 523,777.25<br>$ 12,948.99<br><br>$ 536,726.24 | $ 0.00<br>$ 0.00<br><br>$ 0.00 | $ 417,991.00<br>$ 12,948.99<br><br>$ 430,939.99 |

SUMMARY SUPPORTING APPLICATION FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES